FILED by ELECTRONIC  D.C.

Mar 23 2006

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO: 05-20476-CIV-JORDAN
MAGISTRATE JUDGE KLEIN

HIDALGO CORP.,

    Plaintiff,
v.

J. KUGEL DESIGNS, INC.,
JULIE SABIN a/k/a JULIE A.
KUGEL a/k/a JULIE K.
MOSKOWITZ, and ROBERT SABIN,

    Defendants.
_____/

**COUNTER-DEFENDANTS' VERIFIED MOTION FOR SUMMARY
JUDGMENT, CONCISE STATEMENT OF MATERIAL
FACTS, AND INCORPORATED MEMORANDUM OF LAW**

Counter-Defendants, Hidalgo Corp. ("Hidalgo") and Silvio Hidalgo ("Silvio"), move for Summary Judgment pursuant to Fed.R.Civ.P. 56, on Counter-Plaintiffs' Counterclaim, as follows:

1.     There is no genuine issue as to any material fact and the Counter-Defendants are entitled to judgment as a matter of law on the Counterclaim.

2.     The Counter-Defendants did not wrongfully seize the Counter-Plaintiffs' goods, in violation of U.S.C. § 1116(d) since they acted in good faith.

3.     The Counterclaim for Defamation fails because the Counter-Defendants made no statements outside of the judicial process which subject them to a defamation claim. As such, Counter-Defendants statements are protected by privilege.

WOLFE & GOLDSTEIN, P.A. • 100 S.E. Second Street, Suite 3300 • Miami, Florida 33131
Telephone: (305) 381-7115 • Facsimile: (305) 381-7116

1 of 10

133  SK

4. The Counterclaim for conversion fails because the Counter-Plaintiffs' goods were only temporarily seized and such seizure was under color of law.

Wherefore, Counter-Defendants, Hidalgo Corp. and Silvio Hidalgo, move for Summary Judgment in their favor on Counter-Plaintiffs' Counterclaim.

## CONCISE STATEMENT OF UNDISPUTED FACTS

Counter-Defendant, Hidalgo, is a manufacturer of jewelry which it sells under its registered mark "Hidalgo." Hidalgo has spent in excess of $15,000,000 to develop, promote and advertise its mark and as a result thereof has created a secondary meaning within the jewelry industry. Hidalgo only sells its goods to a network of authorized representatives who are approved by Hidalgo because they maintain high end retail establishments granting a limited number of authorized representatives in any one particular geographic area. Authorized representatives are chosen because they: (a) sell other high quality merchandise; (b) have a satisfactory credit rating; (c) agree to adhere to the policies established by Hidalgo; and (d) agree to place a minimum initial order of merchandise selected by Hidalgo. Counter-Defendant, Silvio Hidalgo is the founder and president of Hidalgo.

Counter-Plaintiff, J. Kugel Designs, Inc. ("J. Kugel"), attempted to become an authorized Hidalgo representative. Because they did not fit within the foregoing criteria, they were rejected.

Notwithstanding such rejection, J. Kugel was able (unbeknownst to Hidalgo) to obtain genuine Hidalgo jewelry through the establishment of a "front", Casino Jewelry at the Sands Hotel and Casino, which had become (using fraudulent means) an authorized Hidalgo representative. As this Court has already determined in its Order on Report and Recommendation dated September 19, 2005, adopting the Amended Report of Magistrate Theodore Klein, dated June 19, 2005, Counter-Plaintiffs were able to establish Casino as a front

2

WOLFE & GOLDSTEIN, P.A. • 100 S.E. Second Street, Suite 3300 • Miami, Florida 33131
Telephone: (305) 381-7115 • Facsimile: (305) 381-7116

2 of 10

or straw man using alias names, false purchase orders, false and forged documents. As such, Counter-Plaintiffs were able to induce Hidalgo to believe they were shipping goods to an authorized Hidalgo representative operating a legitimate retail store at the Sands Hotel and Casino. In reality, and unbeknownst to Hidalgo, Casino had no retail store, but rather the goods were sent to a drop ship post office box and redirected to J. Kugel to fulfill customer orders of goods that Casino had made at traveling "gypsy" jewelry shows.

When Hidalgo learned that the J. Kugel was selling its goods at these traveling jewelry shows, it filed a lawsuit in State Court in Case No. 03-20885 CA (08) seeking a declaration and an injunction preventing J. Kugel from selling Hidalgo jewelry and holding itself as an authorized Hidalgo representative. J. Kugel was served with said suit and they hired counsel to defend such suit. Yet, J. Kugel continued its infringing actions. Since Hidalgo did not know that J. Kugel was obtaining its goods from Casino it filed the underlying action.

Counter-Defendants obtained an affidavit from one of J. Kugel's customers, Corinne Lerman, which stated that (a) J. Kugel held itself to the public as an authorized Hidalgo representative; (b) J. Kugel had offered for sale Hidalgo rings at prices below Hidalgo's wholesale price; (c) she had obtained a Hidalgo ring which Hidalgo determined did not appear to be genuine since it was of a color not generally used by Hidalgo; and (d) J. Kugel solicited custom orders of Hidalgo goods. When Hidalgo first learned that J. Kugel was selling Hidalgo goods, it contacted J. Kugel who claimed they purchased the Hidalgo merchandise from Nordstrom.

Based upon Corrine Lerman's Affidavit, and their knowledge that J. Kugel was not selling genuine Hidalgo goods, Hidalgo had a good faith belief that J. Kugel was selling counterfeit Hidalgo goods.

3

Along with the underlying Complaint, Counter-Defendants sought an ex-parte seizure order pursuant to 17 U.S.C. § 1116 alleging that the Counter-Plaintiffs were, based upon sworn information provided by Corinne Lerman, selling counterfeit Hidalgo goods.

This Court entered an ex-parte seizure Order which determined that Counter-Defendants had established a good faith basis to determine the Counter-Plaintiffs were selling counterfeit goods.

The U.S. Marshals did, pursuant to this Court's Order, seize certain goods in the possession of J. Kugel, which were in a display case of "Hidalgo goods" displayed around three advertising signs displaying the Hidalgo mark.

Magistrate Judge Theodore Klein entered a Report and Recommendation determining that (a) 5 pieces of jewelry seized by the U.S. Marshalls from J. Kugel were not genuine Hidalgo goods; (b) that the Counter-Plaintiffs improperly and without permission of Hidalgo held itself out as an authorized Hidalgo representative; and (c) that the Counter-Plaintiffs used Casino as a front or straw man to improperly and fraudulently obtain genuine Hidalgo merchandise, all in violation of the Lanham Act.

## MEMORANDUM OF LAW

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there is no genuine issues concerning any material facts and where the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 91 L.Ed. 2d 265, 106 S.Ct. 2548 (1986). When there is nothing more than a metaphysical doubt as to material facts, summary judgment is proper. See Matsushita Electric Industries Co. v. Zenith Radio Corp., 475 U.S. 574, 89 L.Ed. 2d 538, 106

4

WOLFE & GOLDSTEIN, P.A. • 100 S.E. Second Street, Suite 3300 • Miami, Florida 33131
Telephone: (305) 381-7115 • Facsimile: (305) 381-7116

4 of 10

S.Ct. 1348 (1986). The Counter-Plaintiffs must show that there exists specific facts creating a genuine issue for trial. See Celotex, 477 U.S. at 322.

NATURE OF THE COUNTERCLAIMS

The Counterclaim asserts claims for: (a) intentional wrongful seizure pursuant to 15 U.S.C. §1116(d)(11); (b) common law conversion; and (c) common law defamation. Counter-Defendants are entitled to summary judgment in their favor on each of these counts.

COUNT I – WRONGFUL SEIZURE UNDER 15 U.S.C. §1116(d)(11)

15 U.S.C. §1116(d)(11) provides in relevant part:

> "A person who suffers damage by reason of a wrongful seizure under this subsection has a cause of action against the applicant for the order under which such seizure was done and shall be entitled to recover such relief as may be appropriate, including damages, loss profits, costs of materials, loss of good will and punitive damages in instances where the seizure was sought in bad faith and unless the court finds extenuating circumstances to recover reasonable attorneys' fees."

The statute does not define what is a "wrongful seizure," however, the wrongful nature of a seizure is largely controlled by the issue of whether the ex-parte seizure order was obtained and executed in good faith. Major League Baseball Promotion Corp. v. Colour-Tex, Inc., 729 F. Supp. 1035, 1055-1056 (D.N.J. 1990).

The basis of Counter-Plaintiffs' claim is that Hidalgo acted in bad faith. (Counterclaim, Pars. 39 and 40). The Court should determine that Hidalgo acted in good faith, as a matter of law, based upon the uncontroverted evidence of its reasonable belief that J. Kugel was selling counterfeit goods and had engaged in intentional trademark infringement. Even if Hidalgo's belief as to the authenticity of the goods (sold by an infringer) ultimately turned out be false, such facts are irrelevant to claim a bad faith. See Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States Co., 195 F.3d 765 (5th Cir. 1999). The Affidavits presented by

WOLFE & GOLDSTEIN, P.A. • 100 S.E. Second Street, Suite 3300 • Miami, Florida 33131
Telephone: (305) 381-7115 • Facsimile: (305) 381-7116

Hidalgo in support of the seizure order conclusively demonstrate that Hidalgo had a good faith reason to believe that J. Kugel was selling counterfeit goods because: (a) the ring which J. Kugel sold to Lerman was not a color of enamel that Hidalgo generally manufactures and the head of quality control for Hidalgo believed the rings to be a counterfeit; (b) two of the Hidalgo rings that J. Kugel had offered for sale to Lerman, were at prices below the wholesale price which Hidalgo sold these goods to its authorized representatives; (c) Hidalgo confronted J. Kugel about the source of their goods and J. Kugel lied about the origin; (d) Hidalgo had knowledge that J. Kugel was not an authorized Hidalgo representative and that it had not purchased <u>any</u> goods from Hidalgo; and (e) that Hidalgo had already filed suit against the Counter-Plaintiffs to stop their sale of Hidalgo goods. Finally, Magistrate Judge Klein specifically determined that J. Kugel did in fact offer for sale at least 5 counterfeit rings; specifically bags 28, 66, 67, 71 and 73.

J. Kugel has the burden to prove that Hidalgo acted in bad faith. See <u>Martin's Herend</u> at 775. This burden requires J. Kugel to show that Hidalgo acted unreasonably based upon information available at the time of the ex-parte Motion; not based upon what Hidalgo may have subsequently learned as a result of the seizure. See <u>Joint Statement on Trademark Counterfeiting Legislation</u>, Senate Committee on the Judiciary, S.R. 98-526, 98th Cong. Second Session, 34-626. The legislative history does offer some guidance by ways of "rules of thumb." The first is that the mere fact that legitimate items had been seized does not make the seizure wrongful; otherwise, a counterfeiter could protect against a seizure of its counterfeit merchandise simply by mingling genuine items with his or her inventory of fakes. The second is that a seizure would be wrongful if the applicant acted in bad faith by seeking it, for an illegitimate purpose. Similarly, it would constitute bad faith for an applicant to deliberately defy a court order limiting its access to confidential documents seized from the defendant.

6

By these principles, the Act leaves the definition of "seizure" to a case by case interpretation in light of Fed.R.Civ.P. 65 and other precedents. Also see <u>Bacardi & Co. v. New York Lighter Co.</u>, 2000 U.S. Dist. Lexis 19852 (E.D.N.Y. 2000). In <u>Bacardi</u>, the plaintiff sued a defendant who created a "Bacarbi" lighter which the Court found to infringe upon the plaintiff's mark, in violation of Sections 1114 and 1125 of the Lanham Act. The defendant then filed a counterclaim, claiming the plaintiff wrongfully seized its goods which were not "counterfeit" within the meaning of Section 1116(d)(1)(b)(i). The Court found that the seizure was not wrongful, because the legislative history of the Lanham Act indicated that "Congress intended to expand, as opposed to limit, the right of ex parte seizure in trademark cases (even if the goods were not counterfeit) and the Court has "established authority under Fed.R.Civ.P. 65, the all writs act, 28 U.S.C. §1651 and the injunctive relief provisions of 15 U.S.C. §1116 to issue seizure orders." <u>Id</u>. at 46, citing to <u>Pepe Ltd. v. Ocean View Factory Outlet Corp.</u>, 770 F. Supp. 754 (D.P.R. 1991). In <u>Pepe</u>, like <u>Bacardi</u>, the Court properly dismissed the defendant's counterclaims for wrongful seizure since the defendant's actions to sell the goods was infringing (even though the goods were not counterfeit). Likewise, in <u>General Electric Co. v. Speicher</u>, 877 F.2d 531 (7th Cir. 1989), the Court reversed an order awarding damages on counterclaim for wrongful seizure, where the defendant infringed upon the plaintiff's mark, although not selling counterfeit goods and where the plaintiff properly complied with the terms of the ex-parte seizure order entered by the Court. In <u>General Electric</u>, the Court focused upon the lack of good faith of the infringing counter-plaintiffs who claimed it was the trademark holder who acted in bad faith.

Just like in <u>Bacardi</u>, <u>Pepe</u> and <u>General Electric</u>, J. Kugel opted to proceed on a claim that the trademark holder has acted in bad faith, rather than a claim merely based upon the

7

WOLFE & GOLDSTEIN, P.A. • 100 S.E. Second Street, Suite 3300 • Miami, Florida 33131
Telephone: (305) 381-7115 • Facsimile: (305) 381-7116

7 of 10

genuineness of seized goods. As shown in the Affidavits of Silvio and Corinne Lerman, Hidalgo had a good faith belief that Counter-Plaintiffs, (whom the Court has already determined to be an infringer), was selling counterfeit goods. As demonstrated in <u>Bacardi</u>, <u>Pepe</u> and <u>General Electric</u>, the Court should consider J. Kugel's own acts of bad faith and its own intentional acts of infringement, in evaluating its claims that Hidalgo has acted in bad faith. These acts are described in greater detail in Hidalgo's Motion for Summary Judgment on its claims. Based upon the illegal and improper actions of J. Kugel, the Court should not find that Hidalgo has acted in bad faith.

## COUNT II – DEFAMATION

In Count II of the Counterclaim, Counter-Plaintiffs allege Hidalgo's President, Silvio, made defamatory statements (that Counter-Plaintiffs were selling counterfeit merchandise). Counter-Plaintiffs admit they have no personal knowledge of such alleged defamatory statements to a third party (outside of the pleadings filed in this cause), except for Counter-Plaintiffs' knowledge of a hearsay statement allegedly made to Arnold Duke (See Robert Sabin Deposition of 2/8/06, at page 308 line 4-13). Silvio has denied making any such statement to Arnold Duke. Since Counter-Plaintiffs have no direct knowledge of the alleged defamatory statement they cannot contradict Silvio's denial (See Sabin Deposition of 2/8/06, at page 307, lines 5-10). Second, even if that alleged statement was made, it has been determined to be truthful (See Report and Recommendation dated June 19, 2005 and Order confirming same). Third, Counter-Plaintiffs admit that they have not been damaged as a result of such alleged statement (See Sabin Deposition 2/8/06, at page 307, lines 16-17).

Aside from the one alleged statement to Arnold Duke, all other statements which Counter-Plaintiffs attribute to Silvio was set forth in the pleadings of this case. As such,

8

WOLFE & GOLDSTEIN, P.A. • 100 S.E. Second Street, Suite 3300 • Miami, Florida 33131
Telephone: (305) 381-7115 • Facsimile: (305) 381-7116

8 of 10

Counter-Defendant is entitled to an absolute privilege for such statements. See <u>Sussman v. Damian</u>, 355 So.2d 809 (Fla. 3rd DCA 1977), <u>Ponzoli & Wassenberg, P.A. v. Zuckerman</u>, 545 So.2d 309, 310 (Fla. 3rd DCA 1989) "statements made in the course of judicial proceedings enjoy an absolute privilege and cannot form the basis for a defamation action so long as the statements uttered are connected with, or are relevant or material to the cause at hand" and <u>Levin, Middlebrooks, Mable, Thomas, Mayes & Mitchell, P.A. v. United States Fire Ins. Co.</u>, 639 So.2d 606 (Fla. 1994).

<div align="center">COUNT III – CONVERSION</div>

In Count III of the Counterclaim, Counter-Plaintiffs allege the Counter-Defendants have wrongfully deprived Counter-Plaintiff of the jewelry that was temporarily seized pursuant to Order of this Court. In order to prove a claim of conversion, a plaintiff must prove a defendant has acted to . . . <u>permanently</u> deprive the plaintiff of its goods. See <u>Del Monte Fresh Produce Co. v. Dole Food Co.</u>, 136 F. Supp. 2d 1271, 1294 (S.D. Fla. 2001) and <u>Fogade v. ENB Revocable Trust</u>, 263 F.3d 1274, 1292 (11th Cir. 2001). The remedy sought by the Counter-Defendant of an ex-parte temporary injunction and seizure order pursuant to 15 U.S.C. § 1116 was temporary by its very definition. The jewelry was seized under color of law and pursuant to this Court's Order. Except for five pieces, Item Nos. 28, 69, 67, 71 and 73 (which were maintained because they appear to be copies of genuine Hidalgo goods) and except for seven pieces which are being held for evidentiary purposes pursuant to the Report and Recommendation of June 9, 2005, and the Order approving same of September 19, 2005; and except for a jacket guard which was contained in Bag 75 which apparently has been lost during the proceedings, all remaining items have been returned to the Counter-Plaintiffs at a meeting of counsel of record for all parties. As

WOLFE & GOLDSTEIN, P.A. • 100 S.E. Second Street, Suite 3300 • Miami, Florida 33131
Telephone: (305) 381-7115 • Facsimile: (305) 381-7116

9 of 10

such, Counter-Defendants are entitled to the entry of an order awarding summary judgment in their favor dismissing the Counterclaim.

## VERIFICATION

I have read and reviewed the facts contained in this Verified Motion for Summary Judgment and verify under penalties of perjury that they are true and correct.

HIDALGO CORP.

By: _____          _____
    Silvio Hidalgo                    SILVIO HIDALGO

## CERTIFICATE OF SERVICE

I certify that a copy hereof was hand-delivered to Nina Stillman Mandel, Esq., Mandel & Mandel LLP, 169 E. Flagler Street, Suite 1200, Miami, Florida 33131, on March 23, 2006.

WOLFE & GOLDSTEIN, P.A.
Counsel for Counter-Defendants, Hidalgo Corp. and Silvio Hidalgo
100 S.E. Second Street
Suite 3300
Miami, Florida 33131
Telephone:    (305) 381-7115
Facsimile:    (305) 381-7116

By: _____
    RICHARD C. WOLFE
    Fla. Bar No: 355607

H:\Hidalgo Corp\v. Kugel, et al\pldgs\counter-defendants motion for summary judgment.doc

10