FILED by _____ D.C.

ELECTRONIC

**Apr 11 2006**

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 05-20476-CIV-JORDAN/KLEIN

HIDALGO CORP.

      Plaintiff,

      v.

J. KUGEL DESIGNS, et al.

      Defendants.

_____/

J. KUGEL DESIGNS, INC.,
      Counter-Plaintiff,

v.

HIDALGO CORP. and
SILVIO HIDALGO,

      Counter-Defendants.

_____/

## COUNTER-PLAINTIFF'S MEMORANDUM IN OPPOSITION TO COUNTER-DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

      Defendants/Counter-Plaintiff J. Kugel Designs, Inc., by and through undersigned counsel, and pursuant to Local Rules 7.1 and 7.5, and Rule 56 of the Federal Rules of Civil Procedure, hereby files its memorandum in opposition to counter/defendants' motion for summary judgment.

      This court should deny the summary judgment motion of counter-defendants Hidalgo Corp. and Silvio Hidalgo against J. Kugel Designs, Inc., because of the following: (1) at the time this case was filed in February 2005 Silvio Hidalgo did not believe that the rings Corinne Lerman purchased from J. Kugel Designs were counterfeit; (2) at that time Hidalgo *knew* that the Lerman rings were, in fact, genuine Hidalgo jewelry; (3) for several years, Hidalgo *knew* that J. Kugel Designs had been

selling genuine Hidalgo jewelry to other customers; and (4) counter-defendants knowingly submitted material false statements to the court in order to obtain an order to seize J. Kugel Designs' property.

In addition, the counter-defendants' motion for summary judgment on the counterclaim fails to present sufficient admissible evidence for this Court to consider in ruling on the motion.

## I.    Material Facts in Dispute Precluding Summary Judgment

At the time this litigation commenced, Mr. Hidalgo, personally and as president of Hidalgo Corp., knowingly submitted to this Court materially false statements in his declaration and in the *ex parte* verified complaint and petition for preliminary injunction. Most importantly, Hidalgo Corp. and Mr. Hidalgo *had no evidence* that J. Kugel Designs was selling counterfeit Hidalgo jewelry. This Court relied upon these false statements in issuing the seizure warrant, resulting in the wrongful seizure of the counter-plaintiff's property.

### A.    Hidalgo Corp. Misrepresented to the Court That J. Kugel Designs Was Selling Counterfeit Hidalgo Jewelry.

Hidalgo Corp. had been contacted in 2002 and 2003 by four customers who purchased Hidalgo jewelry from J. Kugel Designs, Inc., at different International Gem & Jewelry shows around the country. None of these customers received counterfeit Hidalgo jewelry. (S.H. 2/16/06 p. 138:15-19).[1]    In their summary judgment motion, Hidalgo Corp. and Mr. Hidalgo assert that their communication with these customers supported their claim that J. Kugel Designs was violating the Hidalgo trademark. In fact, none of the customers' provided any evidence that J. Kugel Designs was

---

[1]    Depositions transcripts are identified by the witness' initials, the date of the deposition, followed by the page and line numbers. Counter-plaintiff/Defendants filed several transcripts in connection with their pending motion for summary judgment and are relied upon in this memorandum.   In addition, Caroline Camus' deposition transcript is filed in support of this memorandum.

selling counterfeit Hidalgo jewelry, which was the specific allegation that Hidalgo attested to his declaration.

Each customer contacted Hidalgo Corp. for different reasons. Ms. Joy Collins had ordered a gold Hidalgo ring and had received a black ring in error. (S.H. 2/16/06, p. 137:1-25). Ms. Patterson had received a ring in a color she claimed she didn't order. J. Kugel Designs refunded her money entirely. Ms. Jo Locke wanted to verify that the a daisy-style ring set she had purchased was genuine Hidalgo jewelry; she sent the rings to Silvio Hidalgo who confirmed that they were authentic and returned the rings. (S.H. 2/16/06, pp.108:4 - 109:25). Regarding Ms. Elizabeth Newman, there is no evidence regarding why she contacted Hidalgo Corp. (See 5/6/05 prelim. inj. hearing p. 13; S.H. 2/16/06, p. 105). Significantly, Hidalgo has not produced any sworn statement from any of these customers. It is axiomatic that Mr. Hidalgo's verification of the entire summary judgment motion cannot substitute for admissible evidence, inasmuch as the hearsay rule precludes him from testifying as to what any of these individuals may have said.

Contrary to Mr. Hidalgo's declaration attached to the preliminary injunction petition, in none of these cases was there any evidence that J. Kugel Designs was selling counterfeit Hidalgo jewelry. The primary customer complaint concerned difficulty in contacting J. Kugel Designs. Furthermore, none of the complainants stated that J. Kugel Designs had held itself out as an authorized Hidalgo dealer.

## B. Corinne Lerman Purchased Genuine Hidalgo Jewelry From J. Kugel Designs

In November 2004, Corinne Lerman contacted Hidalgo Corp. regarding her purchase of three Hidalgo enamel rings from J. Kugel Designs at an International Gem & Jewelry show. (S.H. 2/17/06, pp. 334:17 - 335:24). Ms. Lerman was dissatisfied with the color of the rings when she

received them, and the delay in receiving them; she complained first to J. Kugel Designs and later to Hidalgo Corp. (See Lerman affidavit, ¶7, attached to the plaintiff's verified emergency ex parte application for temporary restraining order and seizure order, D.E. 2; also attached hereto for the court's convenience as Exhibit B). She claimed that the rings were very dark navy or black, not the purple she had ordered. *Id.* Ms. Lerman subsequently sent the rings to Hidalgo Corp. to be examined. They appeared to be genuine Hidalgo jewelry - they were in Hidalgo style numbers RS 6932 and RS 7217, and they were stamped "Hidalgo" on the inside. Hidalgo Corp. staff agreed that the color was very dark and did not look like a Hidalgo color. (S.H. 2/17/06, p. 317:10-17).

One of Hidalgo's two jewelry manufacturers, Rosie Vega of Rossiter Enterprises, whose styles included these two rings, examined the rings and recommended having them assayed, tested by a metal expert, to confirm whether the gold was 760, or 76 percent gold, Hidalgo's "signature" gold composition. (S.H. 2/17/06, p. 319:3-14). Mr. Hidalgo refused to do so, purportedly in order to "keep it as an exhibit." (S.H. 2/17/06, p. 424:18-23). He also never inquired about having the ring assayed without destroying it. *Id.*

In fact, Mr. Hidalgo has now admitted that his sworn declaration falsely represents to the court that the Lerman rings did not contain the Hidalgo signature alloy and composition, when, in fact, he never learned the truth of the matter. (S.H. 3/15/06, pp. 518:15 - 519:10).

In 2003 and 2004 Hidalgo Corp. experienced problems with certain enamel colors. (S.H. 2/17/06, pp. 336:20 - 337:10). In particular, certain purple and pink shades of enamel appeared different, often darker or a different color, when applied to yellow gold rings as opposed to white gold rings. (S.H. 2/17/06, pp. 300:19-23; 337:4-10). Customers often saw a color on a white ring and ordered it on a yellow ring, not knowing that the color would not appear the same. According

to Hidalgo, Ms. Lerman's ring suffered from this "yellow gold" problem, although Ms. Lerman may not have been aware of it. (S.H. 2/17/06, p. 336:17-24).  Hidalgo did not inform Ms. Lerman of the misunderstanding, which contributed in large part to this litigation.

### C.    Arnold Duke Informed Mr. Hidalgo That J. Kugel Designs Was Not Selling Counterfeit Hidalgo Jewelry.

In late 2004, Mr. Hidalgo contacted Arnold Duke, one of the owners of the International Gem and Jewelry Show, regarding whether J. Kugel Designs was selling counterfeit Hidalgo jewelry. (See Arnold Duke affidavit, attached as Exhibit A).  Mr. Duke explained that his company maintained strict policies prohibiting the sale of counterfeit jewelry at their shows.  *Id.*  Mr. Duke volunteered to examine the Hidalgo jewelry that J. Kugel Designs was displaying.  After doing so with a jeweler's loop, he informed Mr. Hidalgo that the jewelry appeared to be authentic Hidalgo.  *Id.*

Mr. Duke again spoke with Hidalgo in early 2005, before March and before the filing of this lawsuit.  *Id.*  In that conversation, Hidalgo stated that he too had examined Ms. Lerman's rings and *believed they were genuine Hidalgo jewelry*. *Id.*

### D.    Counter-defendants' Factual Assertions In Their Motion Misstated Corinne Lerman's Affidavit.

Contrary to counter-defendants' factual assertions in their summary judgment motion at p. 3, Ms. Lerman did not state in her affidavit that J. Kugel Designs represented itself as an authorized Hidalgo dealer.  Ms. Lerman stated that J. Kugel Designs displayed a Hidalgo brochure and allowed her to order from the brochure.  In addition, Ms. Lerman stated that Julie Kugel told her that J. Kugel Designs obtained the Hidalgo jewelry through another jeweler who purchased directly from Hidalgo. (See Lerman affidavit, ¶9, attached as Exhibit B).

Corinne Lerman also did not state in her affidavit that J. Kugel Designs offered Hidalgo rings below Hidalgo's wholesale price. She stated that she paid "in excess of $1000 for the three rings. In fact, Ms. Lerman paid almost twice the wholesale price, or $950 for her rings that cost $490 wholesale. (See transcript from prelim. inj. hearing, 4/6/05, p. 62:12-18). These disputed facts are material to whether Hidalgo knowingly submitted false statements to the court in order to seize counter-plaintiff's property.

**E.    Hidalgo's Computerized Sales Records Confirmed Ms. Lerman's Rings Were Genuine.**

As Hidalgo Corp.'s marketing director Caroline Camus testified, any of the office staff could easily search the company's computer system to locate sales of jewelry by style number, sort the search by color, and identify each time a Hidalgo dealer purchased that particular item. (C.C. 1/17/06, pp. 149:9 - 150:14). Ms. Camus has worked for Hidalgo Corp. for approximately six years in the accounting and marketing departments. (C.C. 1/17/06, p. 9:8-22).

A search of Hidalgo Corp.'s computer records showed only one Hidalgo dealer purchased these rings, one in style RS7217 and two in style RS6932 in the color purple in size 7¼ between April 1 and December 31, 2004. Ms. Lerman's three purple heart rings were shipped on June 2, 2004, to Casino Jewelers. (See Michael Katsouris affidavit and incorporated two-page printout, attached as Exhibit C).

**F.    Hidalgo's Misrepresentations Were Designed to Mislead the Court and Constitute Bad Faith.**

Mr. Hidalgo's sworn declaration in support of his petition for the seizure warrant contained critical false information:

Hidalgo falsely claimed that when he received Ms. Lerman's rings he "immediately" knew that the rings were imitations. (S.H. declaration ¶4, Exhibit C attached to the plaintiff's verified emergency ex parte application for temporary restraining order and seizure order, D.E. 2; also attached hereto for the court's convenience, Exhibit D). Rather, he and his staff were confused because the rings looked genuine but the color was too dark. (S.H. 2/17/06, p. 317:8-17).

Hidalgo falsely claimed that Ms. Lerman's rings did not contain the "Hidalgo signature alloy and composition." (S.H. declaration ¶5, attached as Exhibit D). Rather, he deliberately avoided learning this information from a qualified expert, yet falsely asserted it to the court. (S.H. 2/17/06, p. 424:18-23).

Hidalgo falsely claimed that J. Kugel Designs sold Hidalgo rings at below wholesale prices. (S.H. declaration ¶7, attached as Exhibit D). Hidalgo's only support for this claim is Mr. Hidalgo's assertion that Ms. Lerman told him that she heard from someone at J. Kugel Designs that they would sell a certain ring at below the wholesale price. Mr. Hidalgo allegedly concluded that the only way for any one to make such a sale would be to sell counterfeit jewelry; otherwise the seller would be operating at a loss. First, this purported conversation is double or triple hearsay, and too far removed from admissible evidence to be considered by this Court. Moreover, the purported "information" is so speculative as to be incredible. The actual evidence is that Ms. Lerman paid approximately twice the wholesale price for her rings, which is standard in the industry. Moreover, no customer ever told Hidalgo that he or she paid less than wholesale price to J. Kugel Designs for Hidalgo jewelry.

Based on what Mr. Hidalgo knew at the time, his declaration and the verified complaint were materially false. The court relied upon these false statements in issuing the seizure warrant, resulting in the wrongful seizure of the counter-plaintiff's property.

### G.    Hidalgo's State Court Case Was Dismissed For Lack of Prosecution.

Counter-defendants fail to inform the court of the status of the state court case that Hidalgo Corp. brought against Julie Kugel, individually. Julie Kugel, now Mrs. Julie Sabin, answered the complaint. No further action took place in the case, and the case was dismissed for lack of prosecution. (See Order of Dismissal, attached as Exhibit E). Hiring an attorney to defend oneself in a lawsuit does not constitute knowledge or an admission.

### H.    Allegations of Counterfeit Jewelry

In its motion, counter-defendants baldly assert that five of the seized rings were counterfeit with no supporting evidence whatsoever. At the April 6, 2005, hearing, Mr. Sabin specifically was asked about ring #28, a checkerboard style. Mr. Sabin testified that this was a genuine Hidalgo ring, style number RS6618 and provided the invoice for that item. (4/6/05 transcript from prelim. inj. hearing, p. 69:5-19). Hidalgo Corp. has never contradicted that testimony.

At his deposition, Silvio Hidalgo identified four of the seized items as being counterfeit, not five, numbers 66, 67, 71 and 73. (S.H. 2/16/06, pp. 37:6-13, 64:6-8, 77:22-24). Regarding item 73, the two bamboo style enamel rings, Mr. Hidalgo admitted that the rings were not a Hidalgo style. (S.H. 2/16/06, p. 64:9-10). After being shown an invoice from a different company for the bamboo rings, Mr. Hidalgo agreed that if the rings were not displayed among the Hidalgo rings but rather were kept separately, that there was no suggestion that they were counterfeit. (S.H. 2/16/06, p. 77:8-16).

Mandel & Mandel LLP
1200 Alfred I. duPont Building   ·   169 East Flagler Street   ·   Miami, Florida   ·   Telephone 305.374.7771

For his part, Mr. Sabin testified that Hidalgo's counsel seized these two bamboo rings from a box separate from the display cases, and that the rings were never displayed with the Hidalgo jewelry; he also identified the other manufacturer's invoice for the rings. (R.S. 2/8/06, pp. 279:5 - 280:23). David DeMarzio, the security director at the convention center in King of Prussia, Pennsylvania, where the seizure took place, confirmed that Hidalgo's attorney seized merchandise from boxes stored behind the booth as well as from inside the display cases. (See Demarzio Affidavit, ¶ 9, attached as Exhibit F).

Regarding the three remaining allegedly counterfeit rings, Hidalgo has not established that any of them are counterfeit. Moreover, Hidalgo has not tested any of the rings to confirm whether they were made with Hidalgo's "signature alloy."

## I.       Hidalgo's Slanderous Statements

Counter-defendants have made several statements that constitute slander per se and are not privileged statements.

1)       Knowingly and/or in reckless disregard for the truth of his statements, Hidalgo told Arnold Duke, president of International Gem and Jewelry Shows, that J. Kugel Designs was selling counterfeit jewelry. (See Arnold Duke Affidavit, ¶ 4, attached as Exhibit A).

2)       Without testing the rings, Hidalgo told Corinne Lerman that the rings she purchased from J. Kugel Designs were counterfeit. (S.H. 2/17/06, pp.438:6 - 439:11).

3)       Hidalgo's execution of the seizure warrant at the International Gem and Jewelry Show on March 25, 2005, was conducted in a loud, disruptive manner while the show was in progress, and by which many participants in the show, including customers and vendors, heard the false allegations

*CASE NO. 05-20476-CIV-JORDAN*
*Page 10*

that J. Kugel Designs was selling counterfeit jewelry. (R.S. 12/12/05, pp. 159:13 - 160:25;

DeMarzio Affidavit ¶10, attached as Exhibit F).

    4)    These false allegations were spread by other jewelry vendors to customers in a

manner that Hidalgo could have anticipated. (R.S. 12/12/05, p. 161:6 - 16).

## II. There Are Substantial Issues Of Material Fact Precluding Summary Judgment In Favor Of The Counter-Defendants.

    Summary judgment may be entered only where the moving party has shown that "there is no

genuine issue as to a material fact." *City of Delray Beach, Florida v. Agricultural Ins. Co.*, 85 F.3d

1527, 1529 (11th Cir. 1996) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The

Court must "view the evidence and all factual inferences therefrom in the light most favorable to the

party opposing the motion." *City of Delray Beach*, 85 F.3d at 1529 (quoting *Clemons v. Dougherty

County, Georgia*, 684 F.2d 1365, 1368-69 (11th Cir. 1982); see also *Stanley Indus., Inc. v. W.M. Barr

& Co., Inc.*, 784 F. Supp. 1570, 1572 (S.D. Fla. 1992). Counter-plaintiff disputes virtually all

counter-defendants' contentions alleged in the Motion, and offers sworn statements and deposition

testimony that refute those contentions. Under these standards, counter defendants are not entitled

to summary judgment and their motion should be denied.

### Count I - Wrongful Seizure

    Title 15, U.S. C., Section 1116(d)(11) creates a cause of action for wrongful seizure in a

trademark infringement case, as follows:

> A person who suffers damages by reason of a wrongful seizure under this subsection
> has a cause of action against the applicant for the order under which such seizure was
> made, and shall be entitled to recover such relief as may be appropriate, including
> damages for lost profits, cost of materials, loss of good will, and punitive damages
> in instances where the seizure was sought in bad faith, and, unless the court finds
> extenuating circumstances, to recover a reasonable attorney's fee . . . .

*CASE NO. 05-20476-CIV-JORDAN*
*Page 11*

Whether a seizure is wrongful must be assessed on a case-by-case basis.  Congress provided some guidelines for making that determination.  A seizure may be found to be wrongful:  (1) where an applicant acted in "bad faith" in seeking the order; *or* (2) if the goods seized are predominately legitimate merchandise, even if the plaintiff acted in good faith.  *Waco International v. KHK Scaffolding*, 278 F.3d 523, 531(5th Cir. 2002); *citing* Senate Comm. on the Judiciary, S. Rep. No. 98-526, at 8 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3627, 3634.

### 1.    Counter-defendants Acted In Bad Faith In Seeking The Seizure Order.

In contrast to counter-defendants' assertions, there are significant disputed issues of material fact regarding whether Hidalgo Corp. knowingly and intentionally made false representations to the district court in order to obtain the seizure order against the defendants.  Before submitting the verified preliminary injunction petition to the court, the counter-defendants knew the following:

- Hidalgo Corp. and Mr. Hidalgo had no proof of any kind that J. Kugel Designs had sold a counterfeit Hidalgo ring to anyone;

- none of the J. Kugel Designs customers who contacted Hidalgo Corp. before Ms. Lerman had received counterfeit jewelry;

- In late 2004 Mr. Duke confirmed to Mr. Hidalgo that J. Kugel Designs was not selling counterfeit Hidalgo jewelry;

- Hidalgo's easily searchable computer records verified that in June 2004, Hidalgo sold one ring in style no. RS7217 and two in style no. RS6932, all in size 7¼, to Casino Jewelers, confirming Ms. Lerman's purchase order;

- Mr. Hidalgo knew that the purple enamel color that Ms. Lerman ordered often appeared considerably darker on a yellow gold ring than a white gold ring, or even appeared to be a different color;

- Hidalgo Corp. deliberately chose not to have the ring tested by an independent metal expert to confirm whether the ring matched the "760" gold that Hidalgo used in its jewelry.

- Ms. Lerman paid $950 for her rings, well above the wholesale price of $490. (See transcript from prelim. inj. hearing, 4/6/05, p. 62:12-18).

Without revealing this knowledge, Mr. Hidalgo sought a seizure order, supported by his written declaration, riddled with false statements designed to mislead the Court.

In addition, the verified complaint contained significant intentionally misleading statements. The fact that the defendants were selling genuine Hidalgo jewelry and identified it as such does not violate federal trademark laws. Hidalgo repeatedly referred to defendants' alleged sale of imitation jewelry, yet Hidalgo did not have any evidence of this.

Moreover, Hidalgo deliberately avoided having the rings tested by an independent assayer, who would have easily verified that the rings were made with the special Hidalgo alloy, and were therefore genuine. Mr. Hidalgo knew that this test would reveal the truth, that the Lerman rings were genuine Hidalgo rings. Instead, he chose to simply misrepresent to the court that any independent analysis was performed on the rings.

## 2. Counter-defendants wrongfully seized "predominately legitimate merchandise" from J. Kugel Designs

Congress also identified a second analysis for wrongful seizure, that is, the "seizure of predominately legitimate merchandise, even if the plaintiff acted in good faith." *Waco International, supra,* 278 at 531. Here, virtually all of the 85 bags containing more than 200 pieces of jewelry that were seized contained genuine jewelry, either Hidalgo enamel rings or generic diamond jewelry. Even if the court were to find Hidalgo did not act in bad faith, there is substantial evidence supporting a determination of wrongful seizure based on this alternative analysis.

In sum, this count is not ripe for determination on summary judgment.

**Count II - Conversion**

Counter-defendants fail to accurately state the law of conversion in Florida, which is "an **unauthorized** act which deprives another of his property permanently or for an indefinite time." *Fogade v. ENB Revocable Trust,* 263 F.3d 1274, 1291 (11th Cir. 2001), emphasis added, *citations omitted.* As set forth in detail above, Hidalgo Corp. and Mr. Hidalgo have submitted misleading documents to the court to improperly obtain the seizure order that allowed the conversion of J. Kugel Designs' property to occur. The seizure order was procured in bad faith, Hidalgo seized the jewelry for an indefinite period, and Hidalgo's continuing hold on the seized jewelry constitutes conversion under Florida law. In sum, based on the significant issues of material fact regarding the count of conversion, this court should deny counter-defendants' motion for summary judgment.

**Count III - Slander Per Se**

Where, as here, the defendant is not a public figure, the elements of defamation are: (1) a false and (2) defamatory (3) statement of fact (4) concerning another, (5) published to a third party (6) negligently. *Anthony Distribs. v. Miller Brewing Co.*, 941 F. Supp. 1567, 1577 (M.D. Fla. 1996), *citing Wagner, Nugent, Johnson, Roth, Romano, Erikson & Kupfer, P.A. v. Flanagan*, 629 So. 2d 113, 115 (Fla. 1993) (Shaw, J., dissenting) (quoting the Restatement (Second) of Torts, § 558 (1977). A statement is defamatory "'if it tends to injure plaintiff in his trade, profession or community standing, or lower him in the estimation of the community.'" *Caudle v. Thomason, 924 F. Supp. 635 (D.C. Cir. 1996), citing, Howard Univ. v. Best, 484 A.2d 958, 988-89 (D.C. 1984)* (quotations omitted). As stated in the commentary to the Restatement, is it not necessary that the defamatory statement actually harm the plaintiff's reputation. "To be defamatory, it is not necessary that the communication actually cause harm to another's reputation or deter third persons from associating

CASE NO. 05-20476-CIV-JORDAN
Page 14

or dealing with him.  Its character depends upon its general tendency to have such an effect." Restatement (Second) of Torts, § 559, comment d.

Certain defamatory words are actionable without proof of any actual damage to the plaintiff, that is, slander per se. *Pollard v. Lyon*, 91 U.S. 225, 226, 23 L. Ed. 308 (1875) (libel per se); *Wagner*, *supra,* 629 So. 2d at 116; *see also Loeb v. Geronemus*, 66 So.2d 241, 244 (1953) ("Only certain well-defined classes of imputation as to crime, disease, particular unfitness for office, etc., or unchastity, have been deemed slanderous per se.").

> One who publishes a slander that ascribes to another conduct, characteristics or a condition that would adversely affect his fitness for the proper conduct of his lawful business, trade or profession, or of his public or private office, whether honorary or for profit, is subject to liability without proof of special harm.

Restatement (Second) of Torts, § 573.

Hidalgo's mistakenly argues that all the slanderous statements made in this case were privileged because they were made in the course of judicial proceedings.  Clearly statements made in court documents, such as in an affidavit or pleading *Wright v. Yurko*, 446 So.2d 1162 (Fla. 5th DCA 1984), or in the due course of judicial proceedings, *Levin, Middlebrooks, et al. v. United States Fire Ins. Co.*, 639 S0.2d 606 (Fla. 1994), are privileged.

Yet, Hidalgo made defamatory statements outside of pleadings, affidavits and testimony that were not privileged that constitute slander per se.  *Sprovero v. Miller,* 404 So. 2d 793, 794 (Fla. 3d DCA 1981).  By telling others that J. Kugel Designs was selling counterfeit jewelry, Hidalgo damaged J. Kugel Designs' reputation in the jewelry business.  Further,  such statements constitute slanderous imputations of criminal conduct, which also is slander per se. See Restatement (Second) of Torts, § 571.

Mandel & Mandel LLP
1200 Alfred I. duPont Building   ·   169 East Flagler Street   ·   Miami, Florida   ·   Telephone 305.374.7771

In addition, the loud and disruptive manner in which Hidalgo seized J. Kugel Designs' property, in the middle of the jewelry show filled with exhibitors and customers who overheard the false allegations, constituted another example of defamation actionable as slander per se.  (R.S. 12/12/05, p. 161:6 - 16).

**Conclusion**

In conclusion, Counter-plaintiff respectfully requests this Court deny counter-defendants' motion for summary judgment as to all counts in the verified amended counterclaim.

Respectfully submitted,

/s Nina Stillman Mandel

_____

NINA STILLMAN MANDEL
Florida Bar No. 843016
LARA NEZAMI
Florida Bar No. 0142468
MANDEL & MANDEL LLP
1200 Alfred I. duPont Building
169 East Flagler Street
Miami, Florida 33131
Telephone: 305.374.7771
Facsimile: 305.374.7776
nsmandel@mandel-law.com

*CASE NO. 05-20476-CIV-JORDAN*
*Page 16*

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of counter-plaintiff's opposition to counter-defendants' motion for summary judgment was served by first-class mail this 11th day of April, 2006, to Richard C. Wolfe, Esq., Wolfe & Goldstein, P.A., 100 S. E. 2nd Street, Suite 3300, Miami, FL 33131.

/s Nina Stillman Mandel

_____

Nina Stillman Mandel

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 05-20476-CIV-JORDAN/KLEIN

HIDALGO CORPORATION

      Plaintiff,

      v.

J. KUGEL DESIGNS, et al.

      Defendants.

_____/

J. KUGEL DESIGNS, INC.,
      Counter-Plaintiff,

v.

HIDALGO CORP. and
SILVIO HIDALGO,

      Defendants.

_____/

## DECLARATION OF ARNOLD DUKE

I, ARNOLD DUKE, declare as follows:

1.      I am one of the owners of the International Gem & Jewelry Show, Inc.

("InterGem"), which operates approximately 90 jewelry shows throughout the country.  My

1

company has strict policies prohibiting any exhibitor from selling counterfeit jewelry.

2.     J. Kugel Designs has been a frequent exhibitor with our shows for approximately five years, from at least 2001 until the present.

3.     I spoke with Silvio Hidalgo on at least three occasions in late 2004 and early 2005 regarding J. Kugel Designs. I also met Mr. Hidalgo in person in 2005 and discussed the same situation.

4.     During a telephone conversation in 2004, Silvio Hidalgo told me that he believed J. Kugel Designs was selling counterfeit Hidalgo jewelry. At the next InterGem jewelry show, I used a jeweler's loop to examine the Hidalgo jewelry that J. Kugel Designs was offering for sale. At that time, I determined that the Hidalgo jewelry appeared to be authentic. I subsequently informed Mr. Hidalgo that J. Kugel Designs' jewelry appeared to be authentic Hidalgo jewelry.

5.     During another conversation that I had with Silvio Hidalgo that took place before March 2005, Mr. Hidalgo told me that he had viewed the rings Corrine Lerman purchased from J. Kugel Designs and he had determined that the rings were authentic Hidalgo merchandise. Although he was satisfied that the rings were in fact genuine Hidalgo jewelry, he was concerned about where J. Kugel was buying the genuine Hidalgo jewelry.

6.     During a subsequent conversation with Silvio Hidalgo in June 2005 at a Las Vegas Jewelry show, Mr. Hidalgo told me that he knew the rings J. Kugel Designs was

2

selling were not counterfeit Hidalgo rings, but that his attorney was pushing him to pursue the case against J. Kugel Designs.

FURTHER AFFIANT SAYETH NAUGHT.

Dated this _18th_ day of February, 2006.

_____
ARNOLD DUKE

STATE OF _Maryland_

COUNTY OF _Montgomery_

The foregoing document was signed and sworn to before me this _18th_ day of _February_, 2006, by ARNOLD DUKE who is personally known to me or who produced the following identification

_____.

PATRICIA E. GRAHAM
NOTARY PUBLIC STATE OF MARYLAND
My Commission Expires February 10, 2009

_____
Notary Public

Notary Seal

3

# EXHIBIT B

FROM :WOLFE GOLDSTEIN          FAX NO. :3053817116          Feb. 16 2005 03:29PM  P2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

HIDALGO CORP.,

      Plaintiff,

v.

                              Civil Action No.
                              Under Seal

J. KUGEL DESIGNS, INC.,
JULIE SABIN a/k/a JULIE A.
KUGEL a/k/a JULIE K. MOSKOWITZ,
and ROBERT SABIN, a/k/a
ROBERTO SABITINO,

      Defendants.

_____/

## DECLARATION OF CORINNE LERMAN

I, CORINNE LERMAN, declare as follows:

1.    I am over 18 years of age and have personal knowledge of the facts stated in this Declaration. If called upon by a court of law to do so, I could and would testify competently as to the facts set forth herein.

2.    In April 2004, I attended the International Gem and Jewelry Show at the Baltimore Convention Center located at One West Pratt Street, Baltimore, Maryland 21201. The International Gem & Jewelry Show, Inc. holds approximately 80 shows a year and sells creations of gems and jewelry directly to the public.

3.    At this particular gem and jewelry show, a jeweler named J. Kugel Designs, Inc. had an entire showcase window displaying "Hidalgo" merchandise. In addition, two individuals named Julie Sabin and her sister-in-law, whose name I do not recall, of J. Kugel Designs, Inc. showed me a "Hidalgo" brochure containing various "Hidalgo" merchandise. At this time, Julie

Sabin also told me that her name was Julie Kugel.  At this time, she told me that this is guaranteed to be genuine Hidalgo jewelry.

4.      After viewing the "Hidalgo" merchandise and brochure, I placed an order with J. Kugel Designs, Inc. to purchase three stackable reputed "Hidalgo" rings for a price in excess of $1,000.00.

5.      Ten weeks after placing my order, I still had not received the reputed "Hidalgo" rings which I had purchased.  Numerous calls to J. Kugel Designs, Inc. went unanswered.

6.      When I finally spoke to Julie Sabin of J. Kugel Designs, Inc., she told me that "Hidalgo" was running behind in the manufacturing of their rings.

7.      When I eventually received the rings, I realized that the rings were not the color I had ordered.  The rings I received were clearly inferior in color, quality and design.  The color of the rings sent to me were navy blue or black even though the rings I had ordered were supposed to be a vivid purple.

8.      In August 2004, I brought the "Hidalgo" rings that I had purchased to J. Kugel Designs, Inc.'s booth in the retail section of the International Gem and Jewelry Show which was being held at the ~~Dulles Expo Center~~ Washington Convention Center *CEL* located in ~~Chantilly, Virginia.~~ Washington, D.C *CEL*

9.      There, I again spoke with Julie Sabin and told her that the rings which they had sent to me were not the color nor quality of the rings which I had ordered.  Julie Sabin was verbally abusive, told me that they do not take merchandise back and claimed that she had bought the "Hidalgo" rings on "eBay", an online marketplace, then she changed her story.  She said she bought the rings from a jeweler from in turn bought the rings from Hidalgo.

10.     Soon thereafter, I sent the rings I had acquired from J. Kugel Designs, Inc. to Silvio Hidalgo at Hidalgo Corp.

2

301   J 0034   P.1

11.    The filing of this instant lawsuit has not been made public.

I DECLARE the foregoing statements to be true and correct under penalty of perjury under the laws of the United States of America.

FURTHER DECLARANT SAYETH NAUGHT

Dated this 16 day of february, 2005.

CORINNE LERMAN

C:\CLIENTS\Hidalgo Corp\pldgs\declaration of lerman.doc

3

# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 05-20476-CIV-JORDAN/KLEIN

HIDALGO CORP.

      Plaintiff,

      v.

J. KUGEL DESIGNS, et al.

      Defendants.

_____/

J. KUGEL DESIGNS, INC.,
      Counter-Plaintiff,

v.

HIDALGO CORP. and
SILVIO HIDALGO,

      Defendants.

_____/

## AFFIDAVIT OF MICHAEL KATSOURIS

BEFORE ME, the undersigned authority personally appeared MICHAEL KATSOURIS, who, upon first being duly sworn, deposes and says as follows:

1.     I am over the age of eighteen (18) and am a resident of Dade county, Florida.

2.     I have personal knowledge of the matters to which I am testifying in this affidavit.

3.      I am President of Katsouris Advanced Technology Service, and I work as a computer consultant. I have a degree in computer science from Seton Hall University, and have worked the computer field for twenty four (24) years.

4.      On February 28, 2006, at the request of Mandel & Mandel LLP, I conducted a search of the Hidalgo Corp. Peachtree Accounting Software.

5.      A representative of Hidalgo Corp., Caroline Camus, directed me to the appropriate databases to search for rings sold by Hidalgo and showed me how to limit my search by date range and by ring style.

6.      I was shown a document entitled Defendants' Third Request for Production of Documents, and asked to search for the items listed in paragraph 14.

Paragraph 14 stated:

> "Computer printout showing the order date, ship date and customer name of all rings ordered from Hidalgo and sold by Hidalgo between April 24, 2004 and December 1, 2004 in the following styles:
>
> (a) RS6932 in yellow gold, size 7 1/4 with purple enamel;
>
> (b) RS7217 in yellow gold, size 7 1/4 with purple enamel."

7.      I was able to conduct a search of the Hidalgo database by limiting the date range and indicating a particular ring style.

8.      A search of the Hidalgo database revealed that Casino Jewelers was the only jeweler who purchased a ring in style RS7217 in the color purple between April 24, 2004 and

- 2 -

December 1, 2004.  The records revealed that a purple ring in size 7.25 in style RS7217 was shipped to Casino Jewelers on June 2, 2004.  A printout of the Hidalgo computer screen is attached as Exhibit A.

9.  A search of the Hidalgo database revealed that Casino Jewelers was the only jeweler who purchased a ring in style RS6932 in the color purple between April 24, 2004 and December 1, 2004.  The same invoice as mentioned above revealed that two purple rings in size 7.25 in style RS6932 was shipped to Casino Jewelers on June 2, 2004. A printout of the Hidalgo computer screen is attached as Exhibit B.

FURTHER AFFIANT SAYETH NAUGHT

## DECLARATION

Under penalties of perjury, I, MICHAEL KATSOURIS, declare that I have read the foregoing Affidavit and that the facts stated in it are true to the best of my knowledge and belief.

Dated: _4/11/06_



MICHAEL KATSOURIS

**SWORN AND SUBSCRIBED** before me this _11th_ day of April, 2006, in the state of Florida,  county of Dade, by Michael Katsouris, who is personally known to me or has provided the following identification _____.

NOTARY PUBLIC

Notary Public State of Florida
S Cavanagh
My Commission DD526359
Expires 03/07/2010

- 3 -

# EXHIBIT A



# EXHIBIT B



# EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

HIDALGO CORP.,

      Plaintiff,                               Civil Action No.

v.                                    **Under Seal**

J. KUGEL DESIGNS, INC.,
JULIE SABIN a/k/a JULIE A.
KUGEL a/k/a JULIE K. MOSKOWITZ,
and ROBERT SABIN a/k/a
ROBERTO SABATINO,

      Defendants.

_____/

## DECLARATION OF SILVIO HIDALGO

I, SILVIO HIDALGO, declare as follows:

1.    I am the founder and President of Hidalgo Corp. ("Hidalgo"), a Florida corporation engaged in the business of manufacturing and distributing high quality jewelry, more specifically the well-known mix and match stackable rings which rings are based upon our copyrighted designs and which are sold in sets of three, four and even five rings together and which are marketed under the registered trademark Hidalgo. I have obtained a Federal Trademark of the name Hidalgo.

2.    During the past twenty (20) years, I have spent much time and effort developing the Hidalgo trademark and the copyrighted designs which are used in connection with the manufacture and distribution of Hidalgo jewelry.

3.    Moreover, I have spent over twenty (20) years establishing the Hidalgo brand name, which connotes to consumers and retail stores a high degree of workmanship and quality.

Over the years, Hidalgo has acquired widespread recognition in the consumer market for high quality rings and other fine jewelry.

4.     On November 18, 2004, I received a letter from an individual named Corinne Lerman who informed me that she purchased three (3) reputed Hidalgo rings from a jeweler named J. Kugel Designs, Inc. which contained the Hidalgo trademark logo but which she believed were imitation Hidalgo rings.  When Ms. Lerman sent me the rings that she had purchased, I was immediately able to determine that those rings were not genuine Hidalgo rings but were imitations.

5.     All Hidalgo rings contain the same signature alloy and composition.  However, the rings sold by J. Kugel Designs, Inc. to Ms. Lerman were clearly inferior in color, quality and design and they do not contain the Hidalgo signature alloy and composition.

6.     Upon further examination, the imitation rings sold by J. Kugel Designs, Inc. contain the Hidalgo stamp and Hidalgo copyright on the inside of the rings which clearly infringe on the existing Hidalgo copyrights and trademark.

7.     J. Kugel Designs, Inc. is selling these imitation Hidalgo rings at a price below the established Hidalgo wholesalers' price.  There is no possible way that one can sell genuine Hidalgo rings at such price without using inferior materials and workmanship.  We only sell our jewelry to a network of authorized retailers who consent to sell our goods at our established prices and we have not given such authorization to the Defendants.

8.     As a result of the availability of these imitation Hidalgo rings being offered by the Defendants, irreparable damage to the Hidalgo brand name, trademark, copyrights and good reputation among consumers has no doubt already occurred and is likely to continue unless the infringing activity complained of in the Complaint is stopped.

9.     The filing of this instant lawsuit has not been made public.

2

I DECLARE the foregoing statements to be true and correct under penalty of perjury under the laws of the United States of America.

FURTHER DECLARANT SAYETH NAUGHT

Dated this 2nd day of December, 2004.

SILVIO HIDALGO

3

# EXHIBIT E

IN THE CIRCUIT COURT OF THE ELEVENTH
JUDICIAL CIRCUIT OF FLORIDA IN AND
FOR MIAMI-DADE COUNTY

HIDALGO CORP

            Plaintiff(s)

vs. - - - - - - - - - -

KUGEL, JULIE A

            Defendant(s)

Case No.  03- 20885-CA-01
Section No.  08

GENERAL JURISDICTION DIV.

***Motion, Notice and Judgment
of Dismissal Pursuant
to Florida Rule of Civil
Procedure  1.420(E)

CLOCK IN

FILED FOR RECORD
05 DEC 22  PM 4: 30
CLERK CIRCUIT COUNTY COURTS
DADE COUNTY FLA.
CIVIL #99

The Court finds that it appears on the face of the record that
no activity by filing of pleadings, order of court or otherwise
has occurred for a period of ONE YEAR; therefore it is adjudged
as follows:

1.  On the Court's own motion, good cause shall be  shown in
writing least five days before the hearing set  in
paragraph 3 why this action should remain pending.

2.  The showing of good cause shall be filed in this action.

3.  If a showing of good cause is filed as provided in
paragraph 2, a hearing on the question shall be held on
12/22/2005  at  10:30 A.M.,

    Before Judge  : GISELA CARDONNE ELY      in Room No.  1500

    Court Location: DADE COUNTY COURTHOUSE
                73 W FLAGLER ST
                MIAMI         FL    33130

4.  If no showing of good cause is filed within  the time specified in
paragraph 1, this action shall  stand dismissed  for lack of prosecution
without further order of court on the date specified in paragraph 3,
without prejudice.

Ordered at Miami, Miami-Dade County, Florida, this      8   day of  DECEMBER, 2005.

***See: TOSAR V. SLADEK, 393 SO. 2D 61
       (FLA. 3D DCA 1981)

                                  Cardonne Ely
                                  Circuit Judge

"If you are a person with  a disability  who needs any  accommodation  to participate  in this
proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please
contact the Dade County Court'S ADA Coordinator at 73 West Flagler, Room 1600, Miami, Fla 33130,
telephone numbers  (305) 349-7175  for voice,    (305) 349-7174 for TDD    and (305) 349-7011
for fax, within  two(2) working days of your receipt of this document. TDD users may also
call 1-800-955-8771, for the Florida Relay Service."

copies furnished counsel

                                            31

# EXHIBIT F

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 05-20476-CIV-JORDAN/KLEIN

HIDALGO CORP.

     Plaintiff,

     v.

J. KUGEL DESIGNS, et a .

     Defendants.

_____/

J. KUGEL DESIGNS, INC.,
     Counter-Plaintiff,

v.

HIDALGO CORP. and
SILVIO HIDALGO,

     Defendants.

_____/

## AFFIDAVIT OF DAVID DEMARZIO

     BEFORE ME, the undersigned authority personally appeared DAVID DEMARZIO, who, upon first being duly sworn, deposes and says as follows:

     1.    I am over the age of eighteen (18) and am a resident of Montgomery county, Pennsylvania.

     2.    I have personal knowledge of the matters to which I am testifying in this

affidavit.

3.      I am the Security Director for the Valley Forge Convention Complex in
King of Prussia, Pennsylvania, and have held this position for the past four years.  I have
been employed at the Valley Forge Convention Complex for fifteen years, serving as a
security officer and night manager.

4.      On March 25, 2005, I was working at the Valley Forge Convention
Complex at the time when an attorney representing  Hidalgo Corp. and the United States
Marshals executed a seizure warrant against J. Kugel Designs, Inc.  The deputy marshals
informed me about the seizure warrant at my office and I escorted them throughout the
seizure.

5.      The following persons were present during the seizure: three United States
Marshals, Lee Baughman, who is the show manager for the International Gem & Jewelry
Show,  the attorney for Hidalgo Corp. and the attorney's friend.

6.      The attorney's friend was present at the commencement of the seizure and
the conclusion of the seizure.  However, he left during substantial portions of the seizure
to shop for jewelry.

7.      Mr. Robert Sabin, the J. Kugel Designs representative, was asked where he
obtained the Hidalgo goods.  He replied that he received the goods from an "authorized
dealer."

8.      Mr. Robert Sabin never stated that he was an "authorized dealer" or

"authorized retailer" of Hidalgo Corp.

9.   The attorney representing Hidalgo Corp. seized merchandise that was located both in the display cases and in boxes stored behind the J. Kugel Designs booth.

10.   The attorney representing Hidalgo Corp. insisted that the seizure take place during the show while other exhibitors, vendors and customers were in the immediate area. The attorney acted in a loud disruptive manner and drew unnecessary attention to the incident.

11.   The attorney continuously made snide and unnecessary comments towards Mr. Sabin during the course of seizure.

FURTHER AFFIANT SAYETH NAUGHT

## DECLARATION

Under penalties of perjury, I, DAVID DEMARZIO, declare that I have read the foregoing Affidavit and that the facts stated in it are true to the best of my knowledge and belief.

Dated: 4/11/06

_____ David DeMarzio

**SWORN AND SUBSCRIBED** before me this _11th_ day of ~~March~~ April, 2006, in the state of _Pennsylvania_, county of _Delaware_, by David DeMarzio, who is personally known to me or has provided the following identification _PA drivers' license._

Case 1:05-cv-20476-CMA   Document 141   Entered on FLSD Docket 04/12/2006   Page 43 of 43

*Carol A. Smallwood*

NOTARY PUBLIC

My Commission expires: *April 4, 2009*

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Carol A. Smallwood, Notary Public
Nether Providence Twp., Delaware County
My Commission Expires Apr. 4, 2009
Member, Pennsylvania Association of Notaries