FILED by
ELECTRONIC

**Apr 12 2006**

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

### CASE NO. 05-20476-CIV-JORDAN/KLEIN

HIDALGO CORP.,

     Plaintiff,

v.

J. KUGEL DESIGNS, et al.

     Defendants.

_____/

J. KUGEL DESIGNS, INC.,
     Counter-Plaintiff,

v.

HIDALGO CORP. and
SILVIO HIDALGO,

     Defendants.

_____/

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendants/Counter-Plaintiff J. Kugel Designs, Inc., and Defendants Robert Sabin and Julie

Sabin (collectively "Defendants"), by and through undersigned counsel, and pursuant to Local Rules

7.1 and 7.5, and Rule 56 of the Federal Rules of Civil Procedure, hereby file their memorandum in

opposition to plaintiff's motion for summary judgment.

### Summary of Argument

This Court should deny plaintiff's request for summary judgment as to Counts I and II of the

amended complaint based on plaintiff's inability to provide sufficient undisputed factual support for

the allegations as well as lack of legal support for these claims.[1]  The defendants assert the following facts preclude the entry of summary judgment: (1) the defendants did not represent themselves to be authorized dealers of Hidalgo jewelry; (2) the defendants did not advertise that they sold Hidalgo jewelry; (3) the defendants properly used Hidalgo's trademark within their display case to identify genuine Hidalgo merchandise; (4) the defendants displayed a sign stating that "to maintain our low prices we are a non-authorized dealer of name brand designer jewelry;" (5) the defendants did not possess or sell counterfeit Hidalgo jewelry.  As argued more fully below, the defendants offer sworn affidavits, deposition testimony, and other evidence that they did not represent themselves as authorized Hidalgo dealers, nor did they possess or sell counterfeit Hidalgo jewelry.  This court should, therefore, deny plaintiff's summary judgment motion.

Many of plaintiff's assertions are immaterial to the claims in this trademark infringement litigation.  Several allegations concern Casino Jewelers, the New Jersey company that was the authorized Hidalgo dealer that sold the jewelry to the defendants.  Plaintiff has not sued Casino in this lawsuit, yet repeatedly refers to alleged improper conduct by Casino.  Whether such assertions, if true, would be relevant to claims in tort or contract law, they have no bearing on the issues before this court.[2]

---

[1]     Plaintiff does not seek summary judgment as to Count III of the amended complaint, which alleges that defendants sold counterfeit Hidalgo jewelry.

[2]     Similarly, plaintiff's argument for attorneys fees is inappropriate, particularly on summary judgment, as plaintiff has not established defendants' willful infringement of the trademark.

At the outset, defendants note that although Silvio Hidalgo verified the plaintiff's motion, many of the factual assertions are beyond his personal knowledge, are not admissible in evidence, and should not be considered by the court.  Rule 56 (e) Fed. R. Civ. Pro.

## I.    Plaintiff's Proffered Material Facts Are Disputed, Precluding Summary Judgment

### A.    Defendants' Did Not Misuse the Hidalgo Trademark

At various jewelry shows, the defendants displayed the Hidalgo trademark in one of their several display cases in two places -- the Hidalgo brochure and on one or two Hidalgo jewelry boxes. The defendants put small plastic signs in each of their showcases, all prepared in the common Times New Roman lettering, with names of the various jewelry designers on display.  (R.S. 12/12/05, p. 58:20 - 60:4). The "Hidalgo" plastic sign did not show the Hidalgo trademark, which consists of the Hidalgo name in a particular font style together with a drawing of Don Quixote.  (See Exh. 42 to S.H. 3/15/06, p. 504:6-11; R.S. dep. 2/8/06, p. 259:8-12).  The defendants' nominative use of the Hidalgo trademark did not violate the Lanham Act.

The defendants' use of the Hidalgo mark by displaying the Hidalgo brochure was not inappropriate.  There is no evidence that defendants altered the Hidalgo mark or put their own name on the Hidalgo brochure in the display case.  Nor is there any evidence that the defendants created any type of advertisement using the Hidalgo mark.  Plaintiff's bald statement on p. 18 of its motion that defendant created advertisements with the Hidalgo mark is baseless and should be disregarded by this court.

### B.    Hidalgo's Rings Are Sold Individually

In contrast to plaintiff's assertion in ¶2, the testimony is undisputed that Hidalgo sells its "stack-able" rings **individually** (S.H. dep 2/16/06 p. 93:14-19).  The rings are displayed in various

combinations in Hidalgo's own advertising, including some in sets, but they are not connected. Most importantly, a customer is not obliged to buy any particular combination of rings. (S.H. 3/15/06, p. 521:3-5). Rather, customers are encouraged to mix and match the various enamel rings with different Hidalgo rings or with rings they already own. (Prelim Inj. Hearing 5/6/05 - p. 20:14-25).

Hidalgo has argued that, by virtue of defendants' displays of Hidalgo enamel rings together with generic diamond bands, Hidalgo's reputation has been damaged. Hidalgo has not offered any proof whatsoever as to this claim. Defendants displayed Hidalgo diamond bands and generic bands with the Hidalgo enamel rings. The generic diamond bands were of the same quality as the Hidalgo bands, that is G color, and VVS1 clarity, although they cost less money. R.S. 2/8/06, p. 272:22-25. Defendants explained to their customers that they could purchase a Hidalgo enamel ring with or without either the Hidalgo diamond band, with a less expensive generic diamond band or with no diamond bands at all. R.S. 12/12/05, p. 103:4-10. Hidalgo offers no evidence to the contrary.

### C.     Hidalgo Did Not Restrict Its Dealers From Reselling to Other Retailers.

Hidalgo never placed any written or verbal restrictions on its authorized retailers to prevent them from reselling to another retailer. S.H. 2/17/06, p. 275:25 - 277:21. Hidalgo asserts that it has certain requirements for becoming one of its authorized dealers, including having a "high-end retail store," providing a credit report, making a large initial purchase of jewelry, and adhering to Hidalgo's policies. Summary judgment motion, ¶3. By contrast, Hidalgo made Casino Jewelers an authorized representative without satisfying any of those purported requirements. Regarding the "high end retail store," no one from Hidalgo ever visited Casino's boutique at the Sands Resort Hotel in Atlantic City, New Jersey. C.C. 1/17/06, p. 13-25. Casino never provided a credit application or

any credit information to Hidalgo.  R.S. 12/12/05, p. 21:10-15.  Casino simply placed its first order for jewelry in 2001 and became an authorized dealer.  R.S. 12/12/05, p. 10:1-9.

In addition, Hidalgo has never restricted its customers from selling to other jewelry dealers. (S.H. 2/17/06, p. 276:7 - 277:25.)  Mr. Hidalgo admitted he knew that once he sold his jewelry to somebody, they were free to do whatever they wanted with it.  (Id.).  Of course, Hidalgo was free to remove any seller from its authorized dealers at any time.

Hidalgo also did not require that its dealers purchase any particular quantity of any jewelry. Hidalgo Corp. sold almost half a million dollars in jewelry to Casino Jewelers over approximately four years and never complained that Casino did not purchase any diamond bands.  Casino ranked at about 90 out of Hidalgo's four hundred authorized dealers.  (S.H. 2/17/06, p. 200:15 - 201:9).

With no factual support whatsoever, Hidalgo claims that by selling Hidalgo jewelry at shows like the International Gem & Jewelry Show that sell to the public and to the trade, the defendants damaged Hidalgo's reputation.  Hidalgo offers no sworn statement, no testimony, no survey, no evidence at all to support this contention.

Although claiming to despise traveling jewelry shows, Hidalgo himself has exhibited and sold its merchandise at many traveling jewelry shows, open to the trade, including the two JA New York shows, the JCK Las Vegas show, the JCK luxury show, the two SJTA shows in Atlanta, the two Centurion shows in Tucson, the CBG shows in Phoenix and Las Vegas, the two JIS shows in Miami Beach, the IJO show in various cities, the duty-free show in Fort Lauderdale, the Prime shows in Sarasota and in San Francisco, and the AGTA show in Tucson.  (C.C. dep. 1/17/06, p. 16 -17).

*CASE NO. 05-20476-CIV-JORDAN*
*Page 6*

**D.    Defendants Never Represented That They Were Authorized Hidalgo Dealers.**

The only facts that plaintiff can point to that support plaintiff's contention that defendants represented themselves as Hidalgo dealers are that the defendants took custom orders of Hidalgo jewelry from their customers and that defendants placed the Hidalgo brochure in their showcase. In contradiction, however, defendants offer substantial evidence that they never represented to anyone that J. Kugel Designs was an authorized Hidalgo dealer.  First, from 2000 to the present, the defendants have displayed a large sign at their jewelry booth stating,

> **"to maintain our low prices we are a non-authorized dealer of name brand designer jewelry"**

See Lee Baughmann affidavit, ¶¶11, 12, Exh. A; Jeff Wikel Affidavit, ¶¶3-5, Exh. B.

Furthermore, Mr. Baughmann, the Inter-Gem jewelry show manager, stated under oath that, during the seizure on March 25, 2005, at the Inter-Gem jewelry show, Robert Sabin did not tell Richard Wolfe, Hidalgo's attorney, that J. Kugel Designs was an authorized Hidalgo dealer.  Rather, Mr. Baughmann heard Mr. Sabin tell Mr. Wolfe that J. Kugel Designs purchased the Hidalgo jewelry from an authorized dealer. See Baughmann affidavit ¶¶8, 9, attached as Exhibit A.  Similarly, David DeMarzio, the security director for the convention center where the March 25, 2005, Inter-Gem show took place, stated in his affidavit that he heard Robert Sabin tell Mr. Wolfe that J. Kugel Designs obtained the Hidalgo jewelry from an authorized dealer.  DeMarzio stated under oath that Mr. Sabin never said he was an authorized Hidalgo dealer.  See DeMarzio affidavit, ¶7, 8, attached as Exhibit C. See also R.S. dep. 12/12/05, p. 155:3-9.

When questioned by customers, defendants have explained that they buy Hidalgo from another jeweler.  See Corinne Lerman affidavit, ¶9, Exh. D.  Regarding customer complaints,

Mandel & Mandel LLP
1200 Alfred I. duPont Building   ·   169 East Flagler Street   ·   Miami, Florida   ·   Telephone 305.374.7771

Hidalgo has only identified five customers that contacted Hidalgo out of hundreds of J. Kugel Designs' customers who bought Hidalgo jewelry. None purchased counterfeit Hidalgo jewelry. Nor did any customer state that they were misled into thinking that J. Kugel Designs was an authorized dealer. In fact, four of the five customers provided no sworn statement in connection with this litigation; their opinions offered via Mr. Hidalgo's verification of the summary judgment motion should be disregarded by the court as inadmissible hearsay. In particular, Mr. Hidalgo has little or no personal recollection of the customers' actual "complaints." For example, Mr. Hidalgo had no memory of the name "Elizabeth Newman" or why she contacted Hidalgo, and offered no documents supporting any allegation of a complaint. SH depo. 2/16/06, p. 103:15 - 105:18.

### E. Hidalgo's Dismissed Lawsuit Against Julie Kugel Does Not Establish Bad Faith

Hidalgo wrongly asserts that the state court case that Hidalgo Corp. filed against Julie Kugel established Ms. Kugel's knowledge that she was violating federal trademark statute. Julie Kugel, now Mrs. Julie Sabin, answered the complaint, contesting the allegations. Hidalgo took no further action in the case, which was dismissed for lack of prosecution. (See Order of Dismissal, attached as Exhibit E). It is inconceivable that such a scenario would result in any legal implications whatsoever.

### G. Plaintiff Includes Several Inaccurate Assertions In Its Motion.

Although not relevant to the issues at bar, Plaintiff submitted several inaccurate statements in its summary judgment motion. For example, regarding its advertising expenditures (Motion ¶15). Hidalgo failed to inform the court that almost half of its advertising budget was reimbursed or offset by "contributions" from authorized dealers. C.C. dep. 1/17/06, p. 110:25 - 112:7.

Also, Robert Sabin's use of the name "Richard Lewis" in his dealings with Hidalgo Corp. is immaterial to this litigation.  Hidalgo's theory is that by using this alias, Mr. Sabin deceived Hidalgo Corp. regarding his intent to sell Hidalgo jewelry through J. Kugel Designs. This allegation, even if true, would not establish a violation of the federal trademark laws.  Casino was under no restriction from Hidalgo regarding to whom it sold the jewelry.  And the defendants were not obligated to disclose to anyone from where they obtained the jewelry.  Also not material to this case, Casino changed its address and began receiving packages at a location separate from the Sands Resort and Hotel because several deliveries had been misplaced or misdirected within the hotel. (R.S. depo 12/12/05, p. 38:19 - 39:7.)

Regarding Corrine Lerman's rings, Hidalgo has no proof that the rings were not genuine Hidalgo jewelry; he testified "it's more likely than not that it was probably made by Hidalgo but to tell you for sure I would have to break it up."  (S.H. 2/17/06, p. 446: 16-19).  Hidalgo contends that the gold in its jewelry contains 76 percent gold metal in the mixture, which is one percent  more gold than standard 18 karat gold; this allegedly makes Hidalgo's gold different from other gold jewelry. But, Hidalgo has never had Corinne Lerman's rings tested by an independent expert.  Had Hidalgo truly doubted their authenticity, it would have assayed the ring to ascertain its gold content.

Hidalgo's claims regarding how Casino maintained its financial records (¶¶ 19, 20) are similarly irrelevant and immaterial to the instant litigation.  Hidalgo Corp. was not aware of Robert Sabin and had no knowledge that Robert Sabin was married to Julie Kugel.  Hidalgo only knew the name Julie Kugel as the representative of J. Kugel Designs.  No deceptive purpose was served by Robert Sabin using the name Richard Lewis.

CASE NO. 05-20476-CIV-JORDAN
Page 9

IV.    **Argument**

_____    **A.    Legal Standard for Summary Judgment**

Summary judgment may be entered only where the moving party has shown that "there is no genuine issue as to a material fact." *City of Delray Beach, Florida v. Agricultural Ins. Co.*, 85 F.3d 1527, 1529 (11th Cir. 1996) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).  The court must "view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion." *City of Delray Beach*, 85 F.3d at 1529 (quoting *Clemons v. Dougherty County, Georgia*, 684 F.2d 1365, 1368-69 (11th Cir. 1982); see also *Stanley Indus., Inc. v. W.M. Barr & Co., Inc.*, 784 F. Supp. 1570, 1572 (S.D. Fla. 1992).  Plaintiff has sought relief under two theories: the defendants have violated Hidalgo's trademark by displaying generic diamond rings together with Hidalgo rings, and the defendants have held themselves out as authorized Hidalgo dealers.  The defendants dispute virtually all plaintiff's contentions alleged in the Motion, and offers sworn statements, deposition testimony, and other evidence that refute those contentions.  Under these standards, plaintiff is not entitled to summary judgment and the motion should be denied.[3]

**B.    Defendants' Sale of Genuine Hidalgo Goods Does Not Infringe on Hidalgo's Trademark**

In order to succeed on a trademark infringement claim, a trademark holder must show that the defendant used its mark in commerce with its consent and that the "unauthorized use was likely to deceive, cause confusion, or result in mistake." *Davidoff & Cie, SA, v. PLD International Corp.*, 263 F.3d 1297, 1302 (11th Cir. 2001), citing *McDonald's Corp. v. Robertson,* 147 F.3d 1301, 1307

_____

[3]    Defendants' arguments herein are virtually identical to the arguments set forth in defendants' cross motion for summary judgment on the amended complaint, filed on April 3, 2006. [D.E. 137].

CASE NO. 05-20476-CIV-JORDAN
Page 10

(11th Cir. 1998). The primary concern is the probability of customer confusion. *Matrix Essentials v. Emporium Drug Mart, Inc.* 988 F.2d 587, 590 (5th Cir. 1993). The court must take into account the overall context of the marks as well as the totality of circumstances that could cause customer confusion.

In general, "trademark law does not apply to the sale of genuine goods bearing a true mark, even if the sale is without the mark owner's consent." *Matrix, supra, quoting Shell Oil Co. v. Commercial Petroleum, Inc.,* 928 F.2d 104, 107 (4th Cir. 1991); *see Prestonettes v. Coty,* 264 U.S. 359, 368-69 (1924). Under the exhaustion or "first sale" doctrine, the trademark owner's rights over the marked goods are exhausted after the owner's first sale of the product. *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 303 (3rd Cir. 1998). "Therefore, even though a subsequent sale is without a trademark owner's consent, the resale of a genuine good does not violate the Act." *Davidoff & Cie*, 263 F.3d at 1302; *NEC Electronics v. CAL Circuit ALCO, et al.*, 810 F.2d 1506, 1509 (9th Cir. 1987) (defendant's purchase of genuine NEC products from foreign source, importation into U.S., and sale in competition with wholly owned US subsidiary holding assignment of trademark held not violation of trademark laws).

**C.     The Defendants' Practice of Taking Orders from Their Customers and Placing Those Orders with Casino, the Hidalgo Representative, Did Not Constitute the First Sale of Hidalgo Merchandise.**

Hidalgo has misconstrued the first sale doctrine in its theory that the defendants' practice of obtaining orders from customers and then placing the orders with Casino constitutes the "first sale" of Hidalgo's goods. Plaintiff's attempt to redefine the "first sale" doctrine lacks any foundation in the law. Taking an order for merchandise constitutes a contract for sale, not an actual sale of property. A sale requires the passing of title from the seller to the buyer for a price. U.C.C. §2-106.

In the case of a contract for the sale of custom-ordered "future" goods that do not yet exist, no rights can have passed from seller to buyer.  It is fundamental to the analysis that the goods must exist before any interest in them can pass.  U.C.C. §2-105.

Here, the defendants had a contract to sell to their customers; this did not constitute a sale. The "first sale" occurred when Hidalgo sold the goods to Casino upon payment.  U.C.C. § 2-401, Passing of Title.  At this point, the first sale doctrine applied, and Hidalgo lost its ability to control what Casino did with the jewelry it purchased.

Under section 1115(b) of the Trademark Act, the plaintiff bears the burden of proving the likelihood of consumer confusion as part of its *prima facie* case; the defendant has no independent burden to negate the likelihood of **any confusion** in raising the fair use affirmative defense.  *KP Permanent Make-Up, Inc., v. Lasting Impression I, Inc.,* 543 U.S. 111, 125 S.Ct. 542, 551 (2004).

### D.    Defendants Did Not Represent To The Public That They Were Affiliated With Hidalgo

A reseller of trademarked merchandise cannot use the mark in a manner suggesting that the reseller is affiliated with the mark owner's company.  *Stormer v. Howard Johnson*, 587 F. Supp. 275 (W.D. Mich. 1984).  In *Stormer*, the reseller not only displayed the producer's trademark at a trade show and in a trade journal advertisement, but also stamped the reseller's name on the producer's promotional literature and used it to advertise the resale of the producer's products by the reseller. 587 F. Supp. at 279.  Here, defendants conduct contrasts starkly with that addressed in *Stormer*.  The defendants did not advertise in any publication and did not put their name on any Hidalgo literature.  While prominent and pervasive use of a mark will suggest affiliation, mere reference to a marked product will not. *Scott Fetzer Co. v. House of Vacuums, Inc.*, 381 F.3d 477, 485 (5th Cir. 2004).

Hidalgo mistakenly relies on the decision in *Four Seasons Hotel and Resorts, B.V., et al v. Conorcio Barr,* 267 F. Supp. 2d 1268, 1324 (S. D. Fla. 2003), a case that involved the licensor's misuse of the trademark to which it was entrusted pursuant to a license agreement. There, the defendant violated so many aspects of the detailed licensing agreement by which the Four Seasons sought to guarantee that every Four Seasons Hotel in the world maintained the company's extremely high standards. In this case, it is undisputed that there was no licensing agreement between Hidalgo and any dealer. Moreover, the defendants dispute that Hidalgo had any type of formal agreement with any of its dealers. Hidalgo simply made recommendations to its dealers regarding advertising in local media, pricing, etc., and Hidalgo could terminate its willingness to sell to any dealer at any time if the dealer did not follow Hidalgo's recommendations. However, there was no duty on a Hidalgo dealer's part akin to the licensing agreement in the *Four Seasons* case.

### E.   Defendants' Practice of Selling at Jewelry Shows Did Not Affect The Genuineness of Hidalgo's Jewelry

Plaintiff wants this court to impose a requirement that the location of the sale of its merchandise diminishes its mark. Unfortunately for plaintiff, the law does not stretch protection of a trademark to such a degree. "Not all value-added functions dictated by the manufacturer are required to insure a 'genuine' product, however." *Matrix Essentials, supra,* 988 F.2d at 591. Plaintiff's purported requirement that its jewelry be sold from a physical store does not affect the authenticity of its jewelry. Plaintiff claims that the "service" factor that is available to a customer who can, for example, return to a store for assistance with a product is not provided by defendants' operation at jewelry shows in convention centers. This factor, however, is not bound together with Plaintiff's trademark rights or protected by the Lanham Act. Such a condition would arguably be

established by independent contractual agreements, and potentially litigated via tort or contract claims.  Such issues are not before this Court.

Similarly, in *H.L. Hayden Co. and Schein Dental Equipment Corp. v. Siemens Medical Systems, Inc., et al.*, 879 F.2d 1005 (2d Cir. 1989), the defendant sold through a catalog plaintiff's "high end" trademarked dental equipment.  The plaintiff argued that defendant's failure to include the installation service with the purchase of the equipment violated the trademark laws.  The Second Circuit affirmed the district court's dismissal of this claim on the ground that the defendant sold genuine products, that customers knew they would not receive those services, and "that the unauthorized sale of a genuine trademarked product does not in itself constitute trademark infringement*,"* since there is "no possibility of deception or confusion."  *Id.* at 1023-24.

By contrast, in *Shell*, the court found the defendant - a distributor - violated the trademark laws when it did not follow Shell's strict cleaning standards that Shell **required** of its dealers, which standards were imposed to protect the consumer from receiving defective or dirty oil.  *Id.  See also Adolph Coors Co. v. A. Genderson & Sons, Inc.,* 486 F. Supp. 131 (D. Colo. 1980) (unauthorized distributor's failure  to abide by Coors strict refrigeration requirements of its beer, made without preservatives, failed to maintain beer's "genuine" quality).

In this case, plaintiff sells jewelry, and defendants did nothing to affect the genuineness of Hidalgo's jewelry or to confuse the public regarding the authenticity of Hidalgo's goods.

Although Hidalgo Corp. says that it would like to control the re-sale of its merchandise, in particular to prevent sale at certain traveling jewelry shows, the federal trademark law does not grant such infinite power.  As Mr. Hidalgo admitted, once the item is sold, the owner can do whatever he or she want with it. S.H. 2/17/06, 277:20-25.

III.    **Conclusion**

In conclusion, because the motion is controverted in all material respects, this Court should

deny plaintiff's motion for summary judgment on counts I and II of the amended complaint.

Respectfully submitted,

/s/ Nina Stillman Mandel

_____
NINA STILLMAN MANDEL
Florida Bar No. 843016
LARA NEZAMI
Florida Bar No. 0142468
MANDEL & MANDEL LLP
1200 Alfred I. duPont Building
169 East Flagler Street
Miami, Florida 33131
Telephone: 305.374.7771
Facsimile: 305.374.7776
nsmandel@mandel-law.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of defendants' opposition to plaintiff's

motion for summary judgment was served by email this 12th day of April, 2006, to Richard C. Wolfe,

Esq., Wolfe & Goldstein, P.A., 100 S. E. 2nd Street, Suite 3300, Miami, FL 33131.

/s/ Nina Stillman Mandel
_____
Nina Stillman Mandel

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 05-20476-CIV-JORDAN/KLEIN

HIDALGO CORP.

      Plaintiff,

      v.

J. KUGEL DESIGNS, et al.

      Defendants.

_____/

J. KUGEL DESIGNS, INC.,
      Counter-Plaintiff,

v.

HIDALGO CORP. and
SILVIO HIDALGO,

      Defendants.

_____/

## AFFIDAVIT OF LEE BAUGHMAN

BEFORE ME, the undersigned authority personally appeared LEE BAUGHMAN, who, upon first being duly sworn, deposes and says as follows:

    1.    I am over the age of eighteen (18), am a resident of Garrett County, Maryland, and have personal knowledge of the matters to which I am testifying in this affidavit.

    2.    I am the show manager for International Gem & Jewelry Show Inc.

("InterGem") and I attend most of the 80 InterGem shows across the country.

3.      J. Kugel Designs, Inc., has been a frequent exhibitor with InterGem for approximately five years.

5.      I was present on March 25, 2005, at the InterGem Show at the Valley Forge Convention Complex in King of Prussia, Pennsylvania, when an attorney for Hidalgo Corp. and the several United States Marshals executed a seizure warrant for Hidalgo jewelry on J. Kugel Designs.

6.      The following persons were present during the seizure: three United States Marshals, the Director of Security for the Valley Forge Convention Complex, the attorney for Hidalgo Corp. and the attorney's friend.

7.      The attorney's friend was present at the beginning of the seizure and then he left for a substantial period of time to walk around the jewelry show. He later returned with an item purchased from the show.

8.      Mr. Robert Sabin was asked where he obtained the Hidalgo goods, to which he replied that he purchased the Hidalgo jewelry from an "authorized dealer."

9.      Mr. Robert Sabin never stated that he was an "authorized dealer" or "authorized retailer" of Hidalgo.

10.     Mr. Robert Sabin informed Hidalgo's attorney several times that certain items he was seizing were not Hidalgo jewelry. The attorney ignored Mr. Sabin's statements and continued to seize items that were not identified as Hidalgo.

11.     At their booth, J. Kugel Designs displays a large sign, approximately 10 feet

wide and 4 feet high, which states "to maintain our low prices we are a non-authorized dealer of name brand designer jewelry." A picture of the sign is attached as Exhibit A.

12.    J. Kugel Designs has displayed the above described sign (Exhibit A) at each InterGem Show where they have exhibited for the past 5 years.


FURTHER AFFIANT SAYETH NAUGHT


## **DECLARATION**

Under penalties of perjury, I, LEE BAUGHMAN, declare that I have read the foregoing Affidavit and attached exhibit and that the facts stated in it are true to the best of my knowledge and belief.

Dated: _3. 30. 06_

_____
Lee Baughman


**SWORN AND SUBSCRIBED** before me this __30__ day of _March_, 2006, in the state of _Maryland_, county of _Carrol_, by Lee Baughman, who is personally known to me or has provided the following identification _drivers license_

_____
NOTARY PUBLIC

My Commission expires:

Notarial Seal
Carolyn S. Cosner,
Notary Public State of Maryland
My Commission Expires Sept. 1, 2007

## EXHIBIT A



## **DECLARATION**

Under penalties of perjury, I, LEE BAUGHMAN, declare that I have read the foregoing Affidavit and attached exhibit and that the facts stated in it are true to the best of my knowledge and belief.

Dated: *3-30-06*

Lee Baughman

**SWORN AND SUBSCRIBED** before me this *30* day of *March*, 2006, in the state of *Maryland*, county of *Harford*, by Lee Baughman, who is personally known to me or has provided the following identification *drivers license*.

NOTARY PUBLIC

My Commission expires:

Notarial Seal
Carolyn S. Cosner,
Notary Public State of Maryland
My Commission Expires Sept. 1, 2007

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 05-20476-CIV-JORDAN/KLEIN

HIDALGO CORP.

      Plaintiff,

      v.

J. KUGEL DESIGNS, et al.

      Defendants.

_____/

J. KUGEL DESIGNS, INC.,
      Counter-Plaintiff,

v.

HIDALGO CORP. and
SILVIO HIDALGO,

      Defendants.

_____/

## <u>AFFIDAVIT OF JEFFREY WIKEL</u>

BEFORE ME, the undersigned authority personally appeared JEFFREY WIKEL, who, upon first being duly sworn, deposes and says as follows:

1.    I am over the age of eighteen (18) and a resident of Sultan, Washington. I have personal knowledge of the matters to which I am testifying in this affidavit.

2.      I am an independent contractor who sets up and takes down exhibitor booths at jewelry shows.

3.      I have personally set up the J. Kugel Designs booth at the International Gem & Jewelry Shows ("InterGem") for the past 2½ years at various locations around the country.

4.      In setting up the booth, I set up the display cases, hang the lights, and hang the sign for J. Kugel Designs prior to each InterGem Show.  At the conclusion of the show I dismantle the booth and prepare all the items for shipping.

5.      At each InterGem show, I hang the J. Kugel Designs sign, which is approximately 10 feet by 4 feet.  The sign states "to maintain our low prices we are a non-authorized dealer of name brand designer jewelry."

6.      A photograph of the J. Kugel Designs sign is attached as Exhibit A.


FURTHER AFFIANT SAYETH NAUGHT

**DECLARATION**

Under penalties of perjury, I, JEFFREY WIKEL, declare that I have read the foregoing Affidavit and attached exhibit and that the facts stated in it are true to the best of my knowledge and belief.

Dated: 3/28/06

Jeffrey Wikel

SWORN AND SUBSCRIBED before me this 28th day of March, 2006, in the state of Washington , county of Snohomish by Jeffrey Wikel, who is personally known to me or has provided the following identification Drivers Lic .

NOTARY PUBLIC   My Commission expires: 3-1-07

GAYLE ANN CLAFFEY
COMMISSION EXPIRES
NOTARY
PUBLIC
3-1-2007
STATE OF WASHINGTON

## EXHIBIT A



## DECLARATION

Under penalties of perjury, I, JEFFREY WIKEL, declare that I have read the foregoing Affidavit and attached exhibit and that the facts stated in it are true to the best of my knowledge and belief.

Dated: 3/28/06

Jeffrey Wikel

SWORN AND SUBSCRIBED before me this 28ᵗʰ day of March, 2006, in the state of Washington, county of Snohomish, by Jeffrey Wikel, who is personally known to me or has provided the following identification Wa. Drivers Lic

NOTARY PUBLIC          My Commission expires: 3-1-07

GAYLE ANN CLAFFEY
COMMISSION EXPIRES
NOTARY
PUBLIC
3-1-2007
STATE OF WASHINGTON

**Deliver To:** _Lore Nezami_

**Company:** _Mandel & Mandel, LLP_

**Fax Number:** _305- 374- 7776_

**Phone Number:** _305- 374- 7771_

**Date:** _4/11/06_

**Page(s):** _(5) incl. Cover page_

**From:** **Dave DeMarzio, Director of Security**

**Company:** **Valley Forge Colonial Limited Partnership**

**Fax Number:** **(610)354-8223**

**Phone Number:** **(610)768-3260**

**Message:** _Sorry for the delay. Please send me an email so I know that you have received this. Thank you._

_(signature) 4/11/06_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 05-20476-CIV-JORDAN/KLEIN

HIDALGO CORP.

    Plaintiff,

    v.

J. KUGEL DESIGNS, et a .

    Defendants.

_____/

J. KUGEL DESIGNS, INC.,
    Counter-Plaintiff,

v.

HIDALGO CORP. and
SILVIO HIDALGO,

    Defendants.

_____/

## AFFIDAVIT OF DAVID DEMARZIO

BEFORE ME, the undersigned authority personally appeared DAVID
DEMARZIO, who, upon first being duly sworn, deposes and says as follows:

1.    I am over the age of eighteen (18) and am a resident of Montgomery county,
Pennsylvania.

2.    I have personal knowledge of the matters to which I am testifying in this

affidavit.

3.      I am the Security Director for the Valley Forge Convention Complex in King of Prussia, Pennsylvania, and have held this position for the past four years. I have been employed at the Valley Forge Convention Complex for fifteen years, serving as a security officer and night manager.

4.      On March 25, 2005, I was working at the Valley Forge Convention Complex at the time when an attorney representing Hidalgo Corp. and the United States Marshals executed a seizure warrant against J. Kugel Designs, Inc. The deputy marshals informed me about the seizure warrant at my office and I escorted them throughout the seizure.

5.      The following persons were present during the seizure: three United States Marshals, Lee Baughman, who is the show manager for the International Gem & Jewelry Show, the attorney for Hidalgo Corp. and the attorney's friend.

6.      The attorney's friend was present at the commencement of the seizure and the conclusion of the seizure. However, he left during substantial portions of the seizure to shop for jewelry.

7.      Mr. Robert Sabin, the J. Kugel Designs representative, was asked where he obtained the Hidalgo goods. He replied that he received the goods from an "authorized dealer."

8.      Mr. Robert Sabin never stated that he was an "authorized dealer" or

"authorized retailer" of Hidalgo Corp.

9.      The attorney representing Hidalgo Corp. seized merchandise that was located both in the display cases and in boxes stored behind the J. Kugel Designs booth.

10.     The attorney representing Hidalgo Corp. insisted that the seizure take place during the show while other exhibitors, vendors and customers were in the immediate area. The attorney acted in a loud disruptive manner and drew unnecessary attention to the incident.

11.     The attorney continuously made snide and unnecessary comments towards Mr. Sabin during the course of seizure.

FURTHER AFFIANT SAYETH NAUGHT

## DECLARATION

Under penalties of perjury, I, DAVID DEMARZIO, declare that I have read the foregoing Affidavit and that the facts stated in it are true to the best of my knowledge and belief.

Dated: _4/11/06_

_____ David DeMarzio

**SWORN AND SUBSCRIBED** before me this _11th_ day of ~~March~~ _April_, 2006, in the state of _Pennsylvania_, county of _Delaware_, by David DeMarzio, who is personally known to me or has provided the following identification _PA drivers license._

Carol A Smallwood

NOTARY PUBLIC

My Commission expires: *April 4, 2009*

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Carol A. Smallwood, Notary Public
Nether Providence Twp., Delaware County
My Commission Expires Apr. 4, 2009
Member, Pennsylvania Association of Notaries

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

HIDALGO CORP.,

      Plaintiff,

v.

J. KUGEL DESIGNS, INC.,
JULIE SABIN a/k/a JULIE A.
KUGEL a/k/a JULIE K. MOSKOWITZ,
and ROBERT SABIN, a/k/a
ROBERTO SABITINO,

      Defendants.

                 /

Civil Action No.
Under Seal

## DECLARATION OF CORINNE LERMAN

I, CORINNE LERMAN, declare as follows:

1.    I am over 18 years of age and have personal knowledge of the facts stated in this Declaration. If called upon by a court of law to do so, I could and would testify competently as to the facts set forth herein.

2.    In April 2004, I attended the International Gem and Jewelry Show at the Baltimore Convention Center located at One West Pratt Street, Baltimore, Maryland 21201. The International Gem & Jewelry Show, Inc. holds approximately 80 shows a year and sells creations of gems and jewelry directly to the public.

3.    At this particular gem and jewelry show, a jeweler named J. Kugel Designs, Inc. had an entire showcase window displaying "Hidalgo" merchandise. In addition, two individuals named Julie Sabin and her sister-in-law, whose name I do not recall, of J. Kugel Designs, Inc. showed me a "Hidalgo" brochure containing various "Hidalgo" merchandise. At this time, Julie

Sabin also told me that her name was Julie Kugel.  At this time, she told me that this is guaranteed to be genuine Hidalgo jewelry.

4.      After viewing the "Hidalgo" merchandise and brochure, I placed an order with J. Kugel Designs, Inc. to purchase three stackable reputed "Hidalgo" rings for a price in excess of $1,000.00.

5.      Ten weeks after placing my order, I still had not received the reputed "Hidalgo" rings which I had purchased. Numerous calls to J. Kugel Designs, Inc. went unanswered.

6.      When I finally spoke to Julie Sabin of J. Kugel Designs, Inc., she told me that "Hidalgo" was running behind in the manufacturing of their rings.

7.      When I eventually received the rings, I realized that the rings were not the color I had ordered. The rings I received were clearly inferior in color, quality and design. The color of the rings sent to me were navy blue or black even though the rings I had ordered were supposed to be a vivid purple.

8.      In August 2004, I brought the "Hidalgo" rings that I had purchased to J. Kugel Designs, Inc.'s booth in the retail section of the International Gem and Jewelry Show which was being held at the ~~Dulles Expo Center~~ Washington Convention Center CEL located in ~~Chantilly, Virginia~~ Washington, D.C CEL.

9.      There, I again spoke with Julie Sabin and told her that the rings which they had sent to me were not the color nor quality of the rings which I had ordered. Julie Sabin was verbally abusive, told me that they do not take merchandise back and claimed that she had bought the "Hidalgo" rings on "eBay", an online marketplace, then she changed her story. She said she bought the rings from a jeweler from in turn bought the rings from Hidalgo.

10.     Soon thereafter, I sent the rings I had acquired from J. Kugel Designs, Inc. to Silvio Hidalgo at Hidalgo Corp.

2

Feb 16 05 03:47p    FROM :WOLFE GOLDSTEIN          FAX NO. :3053817116          Feb. 16 2005 03:30PM  P4

11.    The filing of this instant lawsuit has not been made public.

I DECLARE the foregoing statements to be true and correct under penalty of perjury under the laws of the United States of America.

FURTHER DECLARANT SAYETH NAUGHT

Dated this 16 day of February, 2005.

CORINNE LERMAN

C:\CLIENTS\Hidalgo Corp\pldgs\declaration of lerman.doc

3