FILED by _____ D.C.

ELECTRONIC

**May 25 2006**

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 05-20476-CIV-JORDAN/KLEIN

HIDALGO CORP.,

     Plaintiff,

     v.

J. KUGEL DESIGNS, et al.

     Defendants.

_____/

DEFENDANTS' REPLY MEMORANDUM IN
OPPOSITION TO PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants J. Kugel Designs, Inc., Robert Sabin and Julie Sabin, by and through undersigned

counsel, hereby file this reply memorandum and supporting affidavits in opposition to plaintiff's

response to defendants' motion for summary judgment. Following the initial hearings in this case,

the evidence disclosed in discovery demonstrates that summary judgment against the plaintiff on the

amended complaint is warranted.[1]

---

[1]    In contrast to the plaintiff's arguments, the Court's findings at the preliminary injunction stage of the litigation were just that, preliminary determinations based on limited evidence.

> The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove his case in full at a preliminary-injunction hearing,... and the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits.

*CASE NO. 05-20476-CIV-JORDAN*
*Page 2*

At the outset of this litigation, the court determined that virtually all the items that plaintiff seized were not counterfeit and the seizure was improper. The court, therefore, ordered the return of the majority of the seized items. D.E. 48; D.E. 61, p. 2, n.2. The plaintiff's theory of the case then shifted to whether the defendants improperly held themselves out as authorized dealers of Hidalgo merchandise. Defendants have provided several sworn affidavits and other evidence establishing that they clearly identified themselves as "non-authorized dealers of designer jewelry." See affidavits of Lee Baughmann, Jeff Wikel, David DeMarzio and Robert Sabin, attached as exhibits 1, 2, 3, and 4, respectively. In addition, in contrast to the plaintiff's contention, the first sale doctrine does apply to the defendants' sales of Hidalgo jewelry.

1.  J. Kugel Design's Sales of Hidalgo Jewelry Were Protected By The First Sale Doctrine.

Plaintiff argues that the defendants practice of taking orders from its customers for rings to be individually sized and colored constituted the "first sale" in the chain of events, thereby precluding the protection of the traditional "first sale doctrine." This position misconstrues the ownership interest in the specially manufactured goods and when that interest passes from one entity to another. Before applying the first sale doctrine, it is fundamental that the merchandise must exist, be "identified," in order to be sold. Under the Uniform Commercial Code, a sale requires the passing of title from the seller to the buyer for a price. U.C.C. §2-106; Fla. Stat. §672.106.

---

*University of Texas v. Camenisch*, 451 U.S. 390, 395 (U.S. 1981) (internal citations omitted). "... [T]emporary injunction rulings are generally not conclusive determinations on the merits; they should not bar a more thorough consideration of a claim when the evidence and legal arguments are better developed." *David Vincent, Inc. v. Broward County*, 200 F.3d 1325, 1331 (11th Cir. 2000).

> Goods must be both existing and identified before any interest in them can pass. Goods which are not both existing and identified are "future goods" A purported present sale of future goods or of any interest therein operates as a contract to sell.

U.C.C. §2-105; Fla. Stat. §672.105.  In the case of a contract for the sale of custom-ordered "future" goods that do not yet exist, no rights can have passed from seller to buyer.  In essence, the goods must exist before any interest in them can pass.  U.C.C. § 2-105.

In this case, until Hidalgo manufactured the custom ordered items based on the individual size and color preference, and thereafter delivered the items to Casino, no rights had passed from Hidalgo.  "Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes her or his performance with reference to the physical delivery of the goods." U.C.C. §2-401(2).  Defendants' taking an order for specially manufactured merchandise constituted a *contract for sale,* not an actual sale of property.  Contrary to plaintiff's contention, J. Kugel Designs could not have "sold" any Hidalgo merchandise to its customers until it had first delivered or shipped the items to them.  See also §2-501, Insurable interest in goods; manner of identification of goods.

Defendants' taking orders from customers did not constitute the "first sale" of Hidalgo jewelry that did not yet exist.  Each order for a Hidalgo ring was made using existing molds for each ring size and then "painted" according to the specific color selection.  It was not until the goods were manufactured by Hidalgo and shipped to Casino that the first sale occurred.  At that point, Casino was free to sell the jewelry to anyone else.

2.     J. Kugel Designs Legitimately Purchased Hidalgo Jewelry From An Authorized Dealer.

Casino Jewelers, not a party to this litigation, became an authorized Hidalgo dealer without signing any contract or licensing agreement with Hidalgo Corp.  In fact, Hidalgo has failed to restrict

its dealers in any way, including failing to preclude them from reselling to third party vendors. Hidalgo's testimony 2/17/06 p. 226-27. Moreover, the defendants never told their customers that J.Kugel Designs was an authorized dealer. Since 1999, J.Kugel Designs has displayed a large sign clearly identifying the company as "a non-authorized dealer of designer jewelry." Sabin deposition 12/12/05, pp. 61-62. In addition, customers were accurately informed that J. Kugel Designs **purchased** genuine Hidalgo jewelry **from** an authorized dealer. Mr. Sabin so informed plaintiff's counsel at the time of the seizure in March 2005. Sabin deposition 12/12/05, p. 63.

Mr. Labowitz, the friend of plaintiff's counsel who accompanied Mr. Wolfe to the jewelry show where the seizure occurred, was simply mistaken in his testimony that Mr. Sabin said he was an authorized Hidalgo dealer. At the time, Mr. Sabin was speaking to Mr. Wolfe, not to Mr. Labowitz. As he had done before, Mr. Sabin explained that he bought from an authorized dealer, which name he did not reveal at the time.

3.    J. Kugel Designs did not mislead its customers and sold only genuine fine jewelry.

Plaintiff makes various allegations in its memorandum without identifying any testimony or other proof in support thereof. For example, plaintiff offers no support for its allegation that "defendants **sold** genuine Hidalgo goods in combination with non-genuine matching bands, **inducing the public to believe the entire set was genuine**." All the jewelry that defendants sold was genuine gold and diamond jewelry, whether Hidalgo or non-Hidalgo jewelry. The generic diamond bands were not "cheap" or of lesser quality than Hidalgo's diamond bands. These rings were made with diamonds of equal quality to Hidalgo's diamond rings, but were provided by another manufacturer that did not inflate its prices. Robert Sabin 2/8/06, pp. 272-73, 291.

Most importantly, customers were not mis-led into thinking the generic bands were Hidalgo. Customers were specifically informed that they had the option to buy either Hidalgo diamond rings or generic diamond rings. Sabin deposition, 12/12/05, pp. 62-63. Because all the Hidalgo enamel rings are sold individually, not in sets, many customers purchased enamel rings without any diamond bands.

Plaintiff continues to focus on the alleged actions of Casino Jewelers, although having failed to join Casino as a party to this litigation. Plaintiff failed to request relevant discovery from Casino, and then asserts that such information does not exist and that Casino is merely a "front." Plaintiff's discovery requests concerned Casino's purchases from Hidalgo and sales to J. Kugel Designs. Mr. Sabin testified that he was not involved in Casino's daily operations, and received no salary or benefits from Casino. He admitted that he had no information regarding Casino's other customers or its day to day operations, but this does not equate with lack of corroboration. Sabin deposition 2/8/06 at 277-78. Furthermore, the manner in which Casino maintained its records, including whether or not it prepared a check register for this litigation; whether Casino filed or was obligated to file tax returns; whether Casino maintained a retail store; or where Casino maintained *its* offices have no bearing on this litigation.

Plaintiff's suggestion that J. Kugel Designs fabricated accounting records and tax returns has no basis in fact whatsoever. Plaintiff's Response at p. 3, and attached report of William Urban. It is shocking that plaintiff would assert such serious allegations absent any testimonial or other evidentiary support.

Finally, Hidalgo had no licensing agreement or contract with any of its dealers, including Casino. Hidalgo claimed to have selected retailers based on location, but admitted that some

retailers were within one block of each other or around the corner from one another. Silvio Hidalgo 2/17/06, pp. 257-59. Silvio Hidalgo visited some of the retail stores, but never attempted to visit Casino during the four years that Casino sold Hidalgo jewelry. Hidalgo Corp. corresponded periodically with its authorized retailers asking if the retailer wanted to pay to be listed in Hidalgo's magazine advertisements, or suggesting various advertising techniques. See attached Exhibit 5; Caroline Camus' deposition, 106-108. In addition, approximately half of the customers listed on Hidalgo's master customer list are identified as either "prepaid" or "C.O.D." (Hidalgo's customer list filed separately under seal).

4.    The First Sale Doctrine Is Not Limited To Sale of Stock Items

Contrary to the plaintiff's arguments, the *Matrix* and *Stormor* cases do not limit the first sale doctrine only to sales of existing stock items as opposed to custom orders. In *Matrix* the court rejected the plaintiff's contentions, holding that (1) the plaintiff's training of its authorized distributors to provide consultation services to the consumer was part and parcel of the Matrix mark; and (2) the discount seller's display of the Matrix products did not cause consumer confusion over Matrix quality.

This is precisely the case before the court. Once Hidalgo Corp. sells its merchandise, it has no control over its authorized dealers' method of display, or the prices they set for the items, or whether they sell to third party resellers who sell at the Coconut Grove Art Festival as well as at their own retail store.

The critical fact is that J. Kugel Designs did not mislead customers that the generic diamond bands were Hidalgo bands. J. Kugel Designs offered customers both Hidalgo diamond bands as well as similar quality, less expensive diamond bands. Hidalgo's reliance, therefore, on the decision in

CASE NO. 05-20476-CIV-JORDAN
Page 7

*Babbitt Electronics v. Dynascan*, 828 F. Supp. 94 (S.D. Fla. 1993) is misplaced.  In that case, the infringer, Babbitt, had a contract with the trademark holder Dynascan to sell Dynascan's trademarked cordless phones, which Babbitt ordered through Dynsacan and paid Dynascan a royalty; Babbitt later obtained Dynascan's phones directly from the original manufacturer without Dynascan's authorization and sold them under the Dynascan trademark "cobra".

Here, the Hidalgo rings were obtained directly from Hidalgo at the standard prices, not from a third party manufacturer.  Hidalgo was never cut out of any sale.  Moreover, there is no issue of identical quality - the rings are genuine Hidalgo rings.  The generic diamond rings were never sold as Hidalgo diamond rings, and plaintiff has no evidence to support such a theory.

5.      <u>J. Kugel Designs did not create any Hidalgo advertisements</u>.

In an apparent effort to mislead the court, plaintiff suggests that J. Kugel Designs created several "advertisements" using the Hidalgo trademark. (Plaintiff's Response at p. 10).  J. Kugel Designs did not create any advertising or publication using the Hidalgo mark.  In each showcase, the company had a small plastic sign with the various designer names, one of which said the name Hidalgo.  See copy of signs, attached hereto as Exh. 6.  As explained previously, the Hidalgo brochure was displayed within one of the cases together with some Hidalgo jewelry.  The brochure did not have J. Kugel Designs name on it.  Significantly, Hidalgo Corp. does not display its rings in any particular sets either in its magazine advertisements or in its brochures.  Both show stacks of approximately 15 different rings, some with guards and some without.

Other inaccuracies in plaintiff's memorandum include the assertion that the defendants showed Hidalgo's price list to customers - this is false.  J. Kugel Designs never showed the Hidalgo

price list to any customer.  Mr. Sabin adamantly testified to this fact, and plaintiff cannot point to any admissible evidence to the contrary.

6.     <u>The First Sale Doctrine Applies to Copyrighted Items</u>

Plaintiff's copyright argument "misses the mark".  The first sale doctrine applies here.  "The whole point of the first sale doctrine is that once the copyright owner places a copyrighted item in the stream of commerce by selling it, he has exhausted his exclusive statutory right to control its distribution." *Quality King Distributors, Inc. v. L'anza Research Int'l, Inc.,* 523 U.S. 135, 152 (U.S. 1998).  J. Kugel Designs sold Ms. Lerman three of the five rings that are included in the "hearts ring" copyright.  As with the other Hidalgo merchandise, this sale was protected by the first sale doctrine. Hidalgo's sale of the three purple rings to Casino Jewelers occurred on June 2, 2004.  See attached affidavit of Michael Katsouris and incorporated computer printout, exhibit 7.  J. Kugel Designs consummated its sale of the rings to Ms. Lerman when she provided full payment and J. Kugel Designs shipped the rings to her.

CONCLUSION

For the reasons set forth more fully in the defendants' motion for summary judgment, this Court should grant summary judgment against the plaintiff on the three counts of the amended complaint.

Respectfully submitted,

/s Nina Stillman Mandel

_____
NINA STILLMAN MANDEL
Florida Bar No. 843016
LARA NEZAMI
Florida Bar No. 142468
MANDEL & MANDEL LLP
1200 Alfred I. duPont Building
169 East Flagler Street
Miami, Florida 33131
Telephone: 305.374.7771
Facsimile: 305.374.7776

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by first-class mail this 25th day of May, 2006, to Richard C. Wolfe, Esq., Wolfe & Goldstein, P.A., 100 S. E. 2nd Street, Suite 3300, Miami, FL 33131.

/s Nina Stillman Mandel

_____
Nina Stillman Mandel

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 05-20476-CIV-JORDAN/KLEIN

HIDALGO CORP.

     Plaintiff,

     v.

J. KUGEL DESIGNS, et al.

     Defendants.
_____/

J. KUGEL DESIGNS, INC.,
     Counter-Plaintiff,

v.

HIDALGO CORP. and
SILVIO HIDALGO,

     Defendants.
_____/

**AFFIDAVIT OF LEE BAUGHMAN**

BEFORE ME, the undersigned authority personally appeared LEE BAUGHMAN, who, upon first being duly sworn, deposes and says as follows:

    1.    I am over the age of eighteen (18), am a resident of Garrett County, Maryland, and have personal knowledge of the matters to which I am testifying in this affidavit.

    2.    I am the show manager for International Gem & Jewelry Show Inc.

("InterGem") and I attend most of the 80 InterGem shows across the country.

3.  J. Kugel Designs, Inc., has been a frequent exhibitor with InterGem for approximately five years.

5.  I was present on March 25, 2005, at the InterGem Show at the Valley Forge Convention Complex in King of Prussia, Pennsylvania, when an attorney for Hidalgo Corp. and the several United States Marshals executed a seizure warrant for Hidalgo jewelry on J. Kugel Designs.

6.  The following persons were present during the seizure: three United States Marshals, the Director of Security for the Valley Forge Convention Complex, the attorney for Hidalgo Corp. and the attorney's friend.

7.  The attorney's friend was present at the beginning of the seizure and then he left for a substantial period of time to walk around the jewelry show. He later returned with an item purchased from the show.

8.  Mr. Robert Sabin was asked where he obtained the Hidalgo goods, to which he replied that he purchased the Hidalgo jewelry from an "authorized dealer."

9.  Mr. Robert Sabin never stated that he was an "authorized dealer" or "authorized retailer" of Hidalgo.

10.  Mr. Robert Sabin informed Hidalgo's attorney several times that certain items he was seizing were not Hidalgo jewelry. The attorney ignored Mr. Sabin's statements and continued to seize items that were not identified as Hidalgo.

11.  At their booth, J. Kugel Designs displays a large sign, approximately 10 feet

wide and 4 feet high, which states "to maintain our low prices we are a non-authorized dealer of name brand designer jewelry."  A picture of the sign is attached as Exhibit A.

12.    J. Kugel Designs has displayed the above described sign (Exhibit A) at each InterGem Show where they have exhibited for the past 5 years.


FURTHER AFFIANT SAYETH NAUGHT


### DECLARATION

Under penalties of perjury, I, LEE BAUGHMAN, declare that I have read the foregoing Affidavit and attached exhibit and that the facts stated in it are true to the best of my knowledge and belief.

Dated: _3. 30. 06_

_Lee Baughman_


**SWORN AND SUBSCRIBED** before me this _30_ day of _March_, 2006, in the state of _Maryland_, county of _Carroll_, by Lee Baughman, who is personally known to me or has provided the following identification _drivers license_

NOTARY PUBLIC

My Commission expires:

Notarial Seal
Carolyn S. Cosner,
Notary Public State of Maryland
My Commission Expires Sept. 1, 2007

## EXHIBIT A



### DECLARATION

Under penalties of perjury, I, LEE BAUGHMAN, declare that I have read the foregoing Affidavit and attached exhibit and that the facts stated in it are true to the best of my knowledge and belief.

Dated: 3-30-06

_____
Lee Baughman

**SWORN AND SUBSCRIBED** before me this _30_ day of _March_, 2006, in the state of _Maryland_, county of _Hunt_, by Lee Baughman, who is personally known to me or has provided the following identification _drivers license_

_____
NOTARY PUBLIC

My Commission expires:

Notarial Seal
Carolyn S. Cosner,
Notary Public State of Maryland
My Commission Expires Sept. 1, 2007

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 05-20476-CIV-JORDAN/KLEIN

HIDALGO CORP.

       Plaintiff,

       v.

J. KUGEL DESIGNS, et al.

       Defendants.

_____/

J. KUGEL DESIGNS, INC.,
       Counter-Plaintiff,

v.

HIDALGO CORP. and
SILVIO HIDALGO,

       Defendants.

_____/

## <u>AFFIDAVIT OF JEFFREY WIKEL</u>

BEFORE ME, the undersigned authority personally appeared JEFFREY WIKEL, who, upon first being duly sworn, deposes and says as follows:

    1.    I am over the age of eighteen (18) and a resident of Sultan, Washington. I have personal knowledge of the matters to which I am testifying in this affidavit.

2.    I am an independent contractor who sets up and takes down exhibitor booths at jewelry shows.

3.    I have personally set up the J. Kugel Designs booth at the International Gem & Jewelry Shows ("InterGem") for the past 2½ years at various locations around the country.

4.    In setting up the booth, I set up the display cases, hang the lights, and hang the sign for J. Kugel Designs prior to each InterGem Show.  At the conclusion of the show I dismantle the booth and prepare all the items for shipping.

5.    At each InterGem show, I hang the J. Kugel Designs sign, which is approximately 10 feet by 4 feet.  The sign states "to maintain our low prices we are a non-authorized dealer of name brand designer jewelry."

6.    A photograph of the J. Kugel Designs sign is attached as Exhibit A.


FURTHER AFFIANT SAYETH NAUGHT

## DECLARATION

Under penalties of perjury, I, JEFFREY WIKEL, declare that I have read the foregoing Affidavit and attached exhibit and that the facts stated in it are true to the best of my knowledge and belief.

Dated: _3/28/06_

Jeffrey Wikel

SWORN AND SUBSCRIBED before me this _28th_ day of March, 2006, in the state of _Washington_ , county of_Snohomish_ by Jeffrey Wikel, who is personally known to me or has provided the following identification _Drivers Lic_ .


NOTARY PUBLIC        My Commission expires: _3-1-07_

GAYLE ANN CLAFFEY
COMMISSION EXPIRES
NOTARY
PUBLIC
3-1-2007
STATE OF WASHINGTON

## EXHIBIT A



## DECLARATION

  Under penalties of perjury, I, JEFFREY WIKEL, declare that I have read the foregoing Affidavit and attached exhibit and that the facts stated in it are true to the best of my knowledge and belief.

Dated: __3/28/06__

                 Jeffrey Wikel

**SWORN AND SUBSCRIBED** before me this __28 th__ day of March, 2006, in the state of __Washington__, county of __Snohomish__, by Jeffrey Wikel, who is personally known to me or has provided the following identification __Wa. Drivers Lic__

_____       My Commission expires: __3-1-07__
NOTARY PUBLIC

GAYLE ANN CLAFFEY
COMMISSION EXPIRES
NOTARY
PUBLIC
3-1-2007
STATE OF WASHINGTON

**Deliver To:** Lore Nezami

**Company:** Mandel & Mandel LLP

**Fax Number:** 305-374-7776

**Phone Number:** 305-374-7771

**Date:** 4/11/06

**Page(s):** (5) incl Cover page

**From:** **Dave DeMarzio, Director of Security**

**Company:** **Valley Forge Colonial Limited Partnership**

**Fax Number:** **(610)354-8223**

**Phone Number:** **(610)768-3260**

**Message:** Sorry for the delay. Please send me an
email so I know that you have received this.
Thank you,

pj fdq 4/11/06

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 05-20476-CIV-JORDAN/KLEIN

HIDALGO CORP.

    Plaintiff,

    v.

J. KUGEL DESIGNS, et a .

    Defendants.

_____/

J. KUGEL DESIGNS, INC.,
    Counter-Plaintiff,

v.

HIDALGO CORP. and
SILVIO HIDALGO,

    Defendants.

_____/

## AFFIDAVIT OF DAVID DEMARZIO

BEFORE ME, the undersigned authority personally appeared DAVID DEMARZIO, who, upon first being duly sworn, deposes and says as follows:

1.     I am over the age of eighteen (18) and am a resident of Montgomery county, Pennsylvania.

2.     I have personal knowledge of the matters to which I am testifying in this

affidavit.

3.      I am the Security Director for the Valley Forge Convention Complex in King of Prussia, Pennsylvania, and have held this position for the past four years. I have been employed at the Valley Forge Convention Complex for fifteen years, serving as a security officer and night manager.

4.      On March 25, 2005, I was working at the Valley Forge Convention Complex at the time when an attorney representing Hidalgo Corp. and the United States Marshals executed a seizure warrant against J. Kugel Designs, Inc. The deputy marshals informed me about the seizure warrant at my office and I escorted them throughout the seizure.

5.      The following persons were present during the seizure: three United States Marshals, Lee Baughman, who is the show manager for the International Gem & Jewelry Show, the attorney for Hidalgo Corp. and the attorney's friend.

6.      The attorney's friend was present at the commencement of the seizure and the conclusion of the seizure. However, he left during substantial portions of the seizure to shop for jewelry.

7.      Mr. Robert Sabin, the J. Kugel Designs representative, was asked where he obtained the Hidalgo goods. He replied that he received the goods from an "authorized dealer."

8.      Mr. Robert Sabin never stated that he was an "authorized dealer" or

"authorized retailer" of H dalgo Corp.

9.    The attorney representing Hidalgo Corp. seized merchandise that was located both in the display cases and in boxes stored behind the J. Kugel Designs booth.

10.    The attorney representing Hidalgo Corp. insisted that the seizure take place during the show while other exhibitors, vendors and customers were in the immediate area. The attorney acted in a loud disruptive manner and drew unnecessary attention to the incident.

11.    The attorney continuously made snide and unnecessary comments towards Mr. Sabin during the course of seizure.

FURTHER AFFIANT SAYETH NAUGHT

## DECLARATION

Under penalties of perjury, I, DAVID DEMARZIO, declare that I have read the foregoing Affidavit and that the facts stated in it are true to the best of my knowledge and belief.

Dated: 4/11/06

_____ David DeMarzio

**SWORN AND SUBSCRIBED** before me this _11th_ day of ~~March~~ April, 2006, in the state of _Pennsylvania_, county of _Delaware_, by David DeMarzio, who is personally known to me or has provided the following identification _PA drivers license._

Carol A. Smallwood

NOTARY PUBLIC

My Commission expires: April 4, 2009

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Carol A. Smallwood, Notary Public
Nether Providence Twp., Delaware County
My Commission Expires Apr. 4, 2009
Member, Pennsylvania Association of Notaries

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 05-20476-CIV-JORDAN/KLEIN

HIDALGO CORP.

     Plaintiff,

     v.

J. KUGEL DESIGNS, et al.

     Defendants.

_____/

J. KUGEL DESIGNS, INC.,
     Counter-Plaintiff,

v.

HIDALGO CORP. and
SILVIO HIDALGO,

     Defendants.

_____/

## AFFIDAVIT OF ROBERT SABIN

BEFORE ME, the undersigned authority personally appeared ROBERT SABIN, who, upon first being duly sworn, deposes and says as follows:

1.    I am over the age of eighteen (18), am a resident of Palm Beach County, Florida, and have personal knowledge of the matters to which I am testifying in this affidavit.

2.    I am the owner of the company J. Kugel Designs, Inc. ("JKD"), which sells fine gold and diamond jewelry at jewelry shows held at various cities around the United States.

CASE NO. 05-20476-CIV-JORDAN
Page 2

3.      JKD has received sales brochures from Hidalgo Corp. on a regular basis since approximately 2001. Attached is a copy of the most recent 2006 brochure that JKD received within the past 15 days. See Exhibit A. As with previous brochures, in this one Hidalgo Corp. does not displays rings in particular sets. Rather, the brochure shows several stacks of approximately 15 to 18 different rings, some enamel and some diamond guards. The brochure also shows ring jackets in different combinations with ring inserts. All of the rings are sold on an individual basis, not in any type of set.

4.      At JKD's display area at the various jewelry shows, JKD hangs a large sign, 10 feet wide by 4 feet high, with the company name and a disclaimer to the public that states: "To maintain our low prices we are a non-authorized dealer of name brand designer jewelry."

5.      On or about March 25, 2005, Richard Wolfe, counsel for Hidalgo Corp., seized numerous pieces of jewelry owned by my company, J. Kugel Designs, Inc., pursuant to a court order. At the time, I was exhibiting at the International Gem and Jewelry show at the Convention Center in King of Prussia, Pennsylvania. Several deputy U.S. Marshal's assisted in the seizure. They complied with Mr. Wolfe's directions regarding searching through all of my company's bags and boxes, including items not on display. They also searched my car.

6.      The deputy marshals put the rings into bags and numbered the bags. They prepared a handwritten inventory with general descriptions of the rings, but they did not

photograph the rings or other items that were seized.  Mr. Wolfe's friend took some photographs of the showcase but did not photograph each ring or group of rings.

7.    Mr. Wolfe directed the Marshal's to seize two bamboo style enamel rings from a box marked "DeSalvio" that was located under a table behind the showcases.  These rings were not on display with the Hidalgo enamel jewelry and were not visible to anyone.  Those rings were placed in bag Number 73 and have been wrongly claimed by Hidalgo to be counterfeit.  J. Kugel purchased those rings in October 2002 as shown on the attached invoice.  Exhibit B.

8.    J. Kugel Designs, Inc., never possessed any counterfeit Hidalgo rings, and none were seized by the marshals.

9.    From the time of the seizure until Mr. Wolfe returned some of the rings to me and my lawyer, Ury Fischer, pursuant to the court's order, on September 29, 2005, I did not have custody or control of the rings.  At Mr. Wolfe's office, Mr. Fischer and I were not able to examine all of the rings.  Several rings were not in the correctly marked plastic bag.  One bag, Number 75, was empty.  Mr. Wolfe said that he thought the ring had been lost in his files.  Exhibit C.

10.    I have no information regarding any alleged counterfeit rings that are being held by Hidalgo's attorney.  They were never in the possession of J. Kugel Designs, Inc.

MAY 16 2006 3:31PM    HP LASERJET 3200

p.5

*CASE NO. 05-20476-CIV-JORDAN*
*Page 4*

FURTHER AFFIANT SAYETH NAUGHT.

ROBERT SABIN

STATE OF FLORIDA          )
                          )
COUNTY OF MIAMI-DADE      )

**SWORN AND SUBSCRIBED** before me this ___ day of May 2006 in the state of Florida, county of ___Dade___, by Robert Sabin, who is personally known to me or has provided the following identification _____

NOTARY PUBLIC

My Commission expires:



NINA STILLMAN MANDEL
MY COMMISSION # DD 410340
EXPIRES: March 23, 2009
Bonded Thru Notary Public Underwriters

MAY 16 2006 3:31PM   HP LASERJET 3200                                    p.6

# Exhibit A

MAY 16 2006 3:32PM   HP LASERJET 3200                          p. 7



# HIDALGO

## SILVER COLLECTION
## WITH DIAMONDS

14 N.E. 1st Ave, Suite 1009 ~ Miami, FL 33132
Tel: 305-379-0110 • Fax: 305-379-0021
w.hidalgojewelry.com • E-Mail: hidalgocorp@aol.com

### Award -Winning Designer

*idalgo introduces a beatiful new silver collection priced mostly
   from $50 - $750 that will make great gifts year round.
      The collection will have a limited distribution.
ncludes great gifts for new moms; a beautiful sealife collection;
*autiful charms and charm bracelets including his new breeds
of dogs; and of course Hidalgo's famous frogs and animal
      collections which are now available in silver.
Other categories include his 72" pearl stackable necklaces;
   great cufflinks for men and wonderful bangles.
      All designs are available in 18K gold as well.
         Our rings are only available in 18K gold.*

      *Join us at all major trade shows:*

PRSRT STD
U.S. POSTAGE
**PAID**
MIAMI, FL
PERMIT NO. 774

J. KUGEL DESIGNS (NEVER SELL)
7040 WEST PALMETTO PARK ROAD BLDG 4,
SUITE 530
BOCA RATON, FL  33433 USA
USA

Foreign Shows          U.S. Shows

Tokyo              Centurion
Hong Kong          AGTA              JA New York

MAY 16 2006 3:34PM    HP LASERJET 3200                              p.8





MAY 16 2006 3:41PM    HP LASERJET 3200                                        p.10





# HIDALGO
# 18K GOLD RINGS & WATCHES

14 N.E. 1st Ave, Suite 1009 ~ Miami, FL 33132
Tel: 305-379-0110 • Fax: 305-379-0021
www.hidalgojewelry.com • E-Mail: hidalgocorp@aol.com

### Award -Winning Designer

*You are cordially invited to preview Hidalgo's new collection of Swiss watches. We are the only designer watch company that allows its customers to easily interchange their bezels as well as their straps, giving your customers total flexibility to create their own watches. This year we are introducing our new diamond dials in both ceramic and stainless steel styles. When not using the bezels on the watch, they can be used as a circle of life pendant. All watches are Swiss made with Swiss ETA automatic or ETA quartz movement and sapphire crystals.*

*Our expanding 18K gold ring collection this year features a new pastel collection and beautiful engravings underneath the enamels simulating wildlife and a fish tank. We have also grouped the rings in many of our best selling categories with new rings added to all.*

*Join us at all major trade shows:*

| Foreign Shows | U.S. Shows | |
|---|---|---|
| Tokyo | Centurion | JA New York |
| Hong Kong | AGTA | CBG |
| Basel | IAAGFS Duty Free | IJO |
| Bangkok | JCK Luxury | SJTA Atlanta |
| | JCK Vegas (Design Center) | JIS Miami Beach |

© Copyright Hidalgo 2006



## Create Your Own Watch

Select the Watch Styles, Bezels & Straps. All Straps & Bezels are easily interchangeable.
18K Gold Rings to match. Bezels can also be used as circle of life pendants. All watches are
Swiss made with Swiss ETA automatic or ETA quartz movement and sapphire crystals. Bezels are
available in diamonds, sapphires or in enamel colors matching the straps.





MAY 16 2006 3:59PM    HP LASERJET 3200

P.15

# Exhibit B

MAY 16 2006 3:59PM   HP LASERJET 3200

P.16

12/16/2005  14:11   2127583550          PRO PRINT                         PAGE  01

John De Salvio LLC

17 W. 45th Street
Room 804
New York, NY 10036
212/840-6654

| | Invoice |
|---|---|
| Date | Invoice # |
| 10/8/2002 | 89394 |

**Bill To**

Julie Kugel
6615 Boynton Beach Blvd.
Box 321
Boynton Beach, Fla. 3343'

PAID

**Ship To**

561-750-2035
561-222-0404
Fed Ex-2611-8711-6

| Qty | Description | Rate | Amount |
|---|---|---|---|
| 3 | PAIR ER#100 LARGE PANSY | 170.00 | 510.00 |
| 2 | PAIR ER#100 EURO WIRE | 180.00 | 360.00 |
| 4 | PAIR #31 SM PANSY | 160.00 | 640.00 |
| 3 | NE #31 | 78.00 | 234.00 |
| 2 | NE#100 | 95.00 | 190.00 |
| 2 | NE#27 LADYBUG | 65.00 | 130.00 |
| 2 | R#96 3 PANSY RING | 275.00 | 550.00 |
| 2 | PAIR ER#408 CURVED PETAL FLOWER | 180.00 | 360.00 |
| 1 | PAIR ER#241 POINTED PETEL | 185.00 | 185.00 |
| 2 | R#315 SNAKE | 140.00 | 280.00 |
| 1 | R314 DRAGON | 160.00 | 160.00 |
| 4 | R136 NARROW BAMBOO | 125.00 | 500.00 |
| 2 | R271 DOME X RING | 200.00 | 400.00 |
| 1 | R434 WIDE BAMBOO | 135.00 | 135.00 |
| 1 | R 182 FLOWER ON TWISTED WIRE | 180.00 | 180.00 |
| 1 | P202 | 495.00 | 495.00 |
| | POSTAGE | 35.00 | 35.00 |

JKD-1398

MAY 16 2006 4:00PM    HP LASERJET 3200                                    p.17



12/16/2005  14:11    2127683550          PRO PRINT                    PAGE  03



MAY 16 2006 4:02PM    HP LASERJET 3200
5/2005  14:11  2127683550      PRO PRINT        PAGE 02      P.18

**INVOICE**

# Ron

STUDIOS INC.
Commercial Photographers

11 WEST 25 STREET • NEW YORK, N.Y. 10010 • AL 5-2375

John DeSalvio
507 5th Ave.
New York,N.Y.10017

Date ......9.18.1980......

Statement
No. ......................

---

| March 3.1980 | $11,149.92 | |
| April 25.1980 | $    162.80 | $11,312.72 |
| | | |
| Payments | $5,000.00 | |
| | $3,000.00 | $ 8,000.00 |
| Balance: | | $ 3,312.72 |

Please!!!

*Copy of original Statement
for catalogue.*

*L. De Salvio*

# Exhibit C

MAY 16 2006 4:03PM    HP LASERJET 3200                                    P.20



ATTORNEYS AT LAW

BANK OF AMERICA TOWER AT INTERNATIONAL PLACE
100 SOUTHEAST SECOND STREET. SUITE 3300 . MIAMI . FLORIDA. 33131. OFFICE. (305)381-7115 . FAX (305)381-7116
WWW.WOLFELAWMIAMI.COM

RICHARD CHARLES WOLFE
MARK A. GOLDSTEIN
MARC A. SMILEY*

*Also Admitted in New York

Re:    *Hidalgo Corp. v. J. Kugel, et al.*

        I hereby acknowledge delivery of the jewelry described on the attached inventory, except for those items marked with an "X," to wit, Nos. 6, 8, 12, 14, 28, 29, 37, 39, 66, 67, 71 and 73, which are retained by Plaintiff.  Also, Bag # 75 was empty and thus not delivered.  Item Nos. 82, 83, 84 and 85 are not jewelry and have not been delivered.

_____                    _____
Ury Fisher, Esq.                               Robert Sabin
Lott & Friedland P.A.

H:\Hidalgo Corp\v. Kugel, et al\ltrs\letter to janet moreira 9-29-05.doc





# HIDALGO

July 11, 2003

Dear Customers:

As I mentioned in our June letter, we would like ALL OF YOU to have a Duratran of Hidalgo rings in your stores. Please call Carolina for details.

Also I have asked for your e-mail address so I can send these letters by e-mail and have not heard from most of you.

Store_____ e-mail_____

We need the advertising for the fall filled out by July 20. Please respond ASAP.

If you would like to set up an appointment for the upcoming shows please call or fax us:

Show_____ Date_____ Time_____

Name of store_____ Contact_____

Have a great summer.


Hidalgo



HIDALGO CORP • 14 N
• PHONE 305-3
• E-mail hidal



# HIDALGO

### FALL 2003 ADVERTISING

### EGG & HEART PENDANTS
### MATCHING OUR RINGS

TOWN & COUNTRY          OCT NOV DEC 2003          $900 _____

### WHIMSICAL PENDANTS

TOWN & COUNTRY          DEC 2003          $300 _____

### WATCHES WITH
### MATCHING RINGS

TOWN & COUNTRY          OCT NOV DEC 2003          $900 _____

### MEN'S CUFFLINKS

ESQUIRE          DEC 2003          $400 _____
ROBB REPORT          DEC 2003          $300 _____
FORBES          DEC 2003          $800 _____

Name of jewelry store as you would like it to appear _____

Telephone number (no 800 number) _____

Authorized signature _____

HIDALGO CORP • 14 NE 1 ST AVE • STE # 805 • MIAMI, FLORIDA 33132
• PHONE 305-379-0110 • 800-954-3030 • FAX 305-379-0021•
• E-mail. hidalgocorp@aol.com • www.hidalgojewelry.com •

# HIDALGO

### FALL 2003 ADVERTISING

| | | | |
|---|---|---|---|
| TOWN & COUNTRY | AUG & SEP 2003 | $600 | _____ |
| TOWN & COUNTRY | OCT NOV DEC 2003 | $1500 | _____ |
| VOGUE | DEC 2003 | $700 | _____ |
| IN STYLE | NOV 2003 | $1200 | _____ |
| IN STYLE | DEC 2003 | $1200 | _____ |
| ELLE | NOV 2003 | $700 | _____ |
| ELLE | DEC 2003 | $700 | _____ |
| ARCHITECTURAL DIGEST | NOV 2003 | $700 | _____ |
| ARCHITECTURAL DIGEST | DEC 2003 | $700 | _____ |
| NEW YORKER | DEC 2003 | $600 | _____ |
| VERANDA | NOV/DEC 2003 | $1200 | _____ |
| NY TIMES SUNDAY MAGAZINE | DEC 2003 | $600 | _____ |
| W | DEC 2003 | $800 | _____ |
| MARIE CLAIRE | NOV 2003 | $700 | _____ |
| MARIE CLAIRE | DEC 2003 | $700 | _____ |
| LUCKY | DEC 2003 | $700 | _____ |
| GOURMET | DEC 2003 | $800 | _____ |
| HOUSE & GARDEN | DEC 2003 | $600 | _____ |
| AMERICAN AIRLINES | NOV 2003 | $800 | _____ |
| AMERICAN AIRLINES | DEC 2003 | $800 | _____ |
| DELTA AIRLINES | NOV 2003 | $600 | _____ |
| DELTA AIRLINES | DEC 2003 | $600 | _____ |
| UNITED AIRLINES | DEC 2003 | $600 | _____ |
| NORTHWEST | DEC 2003 | $400 | _____ |
| U.S. AIR | DEC 2003 | $400 | _____ |
| CONTINENTAL | DEC 2003 | $400 | _____ |
| MARRIOTT OFFSHORE | DEC 2003 | $300 | _____ |
| FOUR SEASONS | DEC 2003 | $400 | _____ |
| ISLANDS | FALL 2003 | $400 | _____ |
| IN STYLE THE LOOK | FALL 2003 | $800 | _____ |
| MARTHA STEWART WEDDINGS | FALL 2003 | $400 | _____ |
| ELEGANT BRIDE | FALL 2003 | $600 | _____ |
| BRIDE'S | FALL 2003 | $800 | _____ |
| WEDDING DRESSES | FALL 2003 | $400 | _____ |

Option#1:sign up for 14 magazines and you get 4 additional magazines free which we will choose for you.

Option #2:sign up for 7 magazines and you get 2 additional magazines free which we will choose

Option #3:sign up for 4 magazines and you get 1 additional magazine free which we will choose

Name of jewelry store as you would like it to appear _____

Telephone number (no 800 number allowed) _____

Authorized signature _____

HIDALGO CORP • 14 NE 1 ST AVE • STE #805 • MIAMI, FLORIDA 33132
• PHONE 305-379-0110 • 800-954-3030 • FAX 305-379-0021•
• E-mail. hidalgocorp@aol.com • www.hidalgojewelry.com •

ROBERTO SABATINO

J. KUGEL

ITALIA

TESORO

# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 05-20476-CIV-JORDAN/KLEIN

HIDALGO CORP.

     Plaintiff,

     v.

J. KUGEL DESIGNS, et al.

     Defendants.

_____/

J. KUGEL DESIGNS, INC.,
     Counter-Plaintiff,

v.

HIDALGO CORP. and
SILVIO HIDALGO,

     Defendants.

_____/

## AFFIDAVIT OF MICHAEL KATSOURIS

BEFORE ME, the undersigned authority personally appeared MICHAEL KATSOURIS, who, upon first being duly sworn, deposes and says as follows:

1.     I am over the age of eighteen (18) and am a resident of Dade county, Florida.

2.     I have personal knowledge of the matters to which I am testifying in this affidavit.

3.    I am President of Katsouris Advanced Technology Service, and I work as a computer consultant.  I have a degree in computer science from Seton Hall University,  and have worked the computer field for twenty four (24) years.

4.    On February 28, 2006, at the request of Mandel & Mandel LLP, I conducted a search of the Hidalgo Corp. Peachtree Accounting Software.

5.    A representative of Hidalgo Corp., Caroline Camus, directed me to the appropriate databases to search for rings sold by Hidalgo and showed me how to limit my search by date range and by ring style.

6.    I was shown a document entitled Defendants' Third Request for Production of Documents, and asked to search for the items listed in paragraph 14.

Paragraph 14 stated:

> "Computer printout showing the order date, ship date and customer name of all rings ordered from Hidalgo and sold by Hidalgo between April 24, 2004 and December 1, 2004 in the following styles:
>
> (a)  RS6932 in yellow gold, size 7 1/4 with purple enamel;
>
> (b) RS7217 in yellow gold, size 7 1/4 with purple enamel."

7.    I was able to conduct a search of the Hidalgo database by limiting the date range and indicating a particular ring style.

8.    A search of the Hidalgo database revealed that Casino Jewelers was the only jeweler who purchased a ring in style RS7217 in the color purple between April 24, 2004 and

- 2 -

December 1, 2004. The records revealed that a purple ring in size 7.25 in style RS7217 was shipped to Casino Jewelers on June 2, 2004. A printout of the Hidalgo computer screen is attached as Exhibit A.

9. A search of the Hidalgo database revealed that Casino Jewelers was the only jeweler who purchased a ring in style RS6932 in the color purple between April 24, 2004 and December 1, 2004. The same invoice as mentioned above revealed that two purple rings in size 7.25 in style RS6932 was shipped to Casino Jewelers on June 2, 2004. A printout of the Hidalgo computer screen is attached as Exhibit B.

FURTHER AFFIANT SAYETH NAUGHT

## <u>DECLARATION</u>

Under penalties of perjury, I, MICHAEL KATSOURIS, declare that I have read the foregoing Affidavit and that the facts stated in it are true to the best of my knowledge and belief.

Dated: __4/11/06__                                        

MICHAEL KATSOURIS

**SWORN AND SUBSCRIBED** before me this __11th__ day of April, 2006, in the state of Florida, county of Dade, by Michael Katsouris, who is personally known to me or has provided the following identification _____.


NOTARY PUBLIC

Notary Public State of Florida
S Cavanagh
My Commission DD526359
Expires 03/07/2010

- 3 -

# EXHIBIT A



# EXHIBIT B

