UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 05-20476-CIV-JORDAN/TORRES

HIDALGO CORP.,

    Plaintiff,

vs.

J. KUGEL DESIGNS, INC., JULIE SABEN a/k/a JULIE A. KUGEL a/k/a JULIE K. MOSKOWITZ, and ROBERT SABIN a/k/a ROBERTO SABATINO,

    Defendants.
_____/

**REPORT AND RECOMMENDATION ON
COUNTER-DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter comes before the Court on Counter-Defendants' Verified Motion for Summary Judgment [D.E. 133]. The Court held a hearing on October 19, 2006, related to this motion and two other motions for summary judgment in this case. After hearing counsel's arguments and reviewing the papers filed, the undersigned recommends that Counter-Defendants' Verified Motion for Summary Judgment be granted in part and denied in part for the reasons set forth below.

### *I.  BACKGROUND*

Plaintiff, Hidalgo Corp. ("Hidalgo") filed a three-count Complaint in this case alleging that Defendant, J. Kugel Designs, Inc. ("J. Kugel") was liable under the Lanham Act for trademark infringement and false designation of origin and was liable under the Copyright Act for copyright infringement. On the same day that the Complaint was filed, Hidalgo also filed an emergency motion seeking an ex parte seizure order, which the Court

granted. The U.S. Marshals seized certain goods in J. Kugel's possession pursuant to the Court's Order.

After the seizure took place, J. Kugel filed a three-count counterclaim, alleging wrongful seizure, conversion and slander per se. The first two counts are directed at Hidalgo and the count based on slander per se is directed at Hidalgo's President, Silvio Hidalgo ("Mr. Hidalgo"). Counter-Defendants Hidalgo and Mr. Hidalgo now file their motion for summary judgment on the counterclaim, seeking summary judgment on all three counts. The Court will address each count in order.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Imaging Bus. Mach., LLC. v. BancTec, Inc.*, 459 F.3d 1186, 1189 (11th Cir. 2006) (citing Fed. R. Civ. P. 56(c)). In deciding a summary judgment motion, the court must view all the evidence and make all reasonable inferences in the light most favorable to the nonmoving party. *Id.* (citing *Cruz v. Public Super Mkts., Inc.*, 428 F.3d 1379, 1382 (11th Cir. 2005). A material fact is one that might affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where the non-moving party fails to prove an essential element of its case for which it has the burden of proof at trial, summary judgment is warranted. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hilburn v. Murata Elecs. North Am., Inc.*, 181 F.3d 1220, 1225 (11th Cir. 1999). Thus, the task is to determine whether, considering the evidence in the

light most favorable to the plaintiff, there is evidence on which the trier of fact could reasonably find a verdict in their favor. *See Anderson,* 477 U.S. at 251; *Hilburn*, 181 F.3d at 1225.

### III.  ANALYSIS

#### A.  *Count I - Wrongful Seizure*

The Lanham Act provides for ex parte seizure orders permitting the seizure of items involved in a violation of the trademark laws. 15 U.S.C. § 1116(d)(1)(A). The statute also creates a cause of action for wrongful seizure. 15 U.S.C. § 1116(d)(11). J. Kugel filed a counterclaim alleging that Hidalgo wrongfully seized jewelry from it because, at the time of the seizure, Hidalgo knew that the jewelry did not bear counterfeit Hidalgo marks.

15 U.S.C. § 1116(d)(11) states:

> A person who suffers damage by reason of a wrongful seizure under this subsection has a cause of action against the applicant for the order under which such seizure was made, and shall be entitled to recover such relief as may be appropriate, including damages for lost profits, cost of materials, loss of good will, and punitive damages in instances where the seizure was sought in bad faith, and, unless the court finds extenuating circumstances, to recover a reasonable attorney's fee.

"The legislative history of the statute reveals that the term 'wrongful seizure' was deliberately left undefined." *Major League Baseball Promotion Corp. v. Colour-Tex, Inc.*, 729 F. Supp. 1035, 1048 (D.N.J. 1990) (citing Joint Statement on Trademark Counterfeiting Legislation, Senate Comm. on the Judiciary, S.R. No. 98-526, 98th Cong. 2d Sess. 34-626, 628). The legislative history indicates that Congress intended for courts to define over time what constitutes a "wrongful seizure" on a case-by-case basis. *Id.* Congress provided, however, the following guidance:

3

> . . . [A] seizure will be wrongful if the applicant acted in bad faith in seeking it. For example, it would obviously constitute bad faith for an applicant to seek a seizure order in an effort to prevent the sale of legitimate merchandise at discount prices.

*Id.* (citing Joint Statement on Trademark Counterfeiting Legislation, at 34-628, 629).

Hidalgo asks the Court to determine as a matter of law that it did not act in bad faith in seizing J. Kugel's goods. It asserts that it acted in good faith as evidenced by the affidavits presented to the Court in support of its motion for the seizure order. Specifically, Hidalgo argues that the affidavits established that J. Kugel sold a ring to Corinne Lerman ("Lerman") that was of a color not generally manufactured by Hidalgo. It also argues that the head of quality control for Hidalgo believed the ring was counterfeit. Furthermore, Hidalgo asserts that J. Kugel offered to sell to Lerman two rings at prices below their wholesale value. Hidalgo also alleges that when it confronted J. Kugel about the source of its Hidalgo goods, J. Kugel lied about their origin. Hidalgo also knew that J. Kugel was not an authorized dealer and that it had not purchased any goods directly from Hidalgo.[1]

J. Kugel counters that Hidalgo's representative, Mr. Hidalgo, submitted materially false statements in his affidavit, ex parte verified complaint, and petition for preliminary injunction. It asserts that Hidalgo had no evidence that J. Kugel was selling counterfeit Hidalgo jewelry. J. Kugel states that, out of the four customers who contacted Hidalgo

---

[1] Hidalgo argues that the state court action it had previously filed against J. Kugel to stop its sale of Hidalgo goods is further evidence of Hidalgo's good faith belief that J. Kugel was selling counterfeit goods. This argument is not persuasive, however, because at that point it had never been determined that J. Kugel was selling counterfeit Hidalgo rings. As Hidalgo does not argue that the previous lawsuit uncovered evidence of such counterfeiting, we will not give this particular argument any weight.

after purchasing jewelry from J. Kugel, none provided evidence that J. Kugel was selling counterfeit Hidalgo rings or posturing as an authorized Hidalgo dealer.

J. Kugel attached as Exhibit A to its response the affidavit of Arnold Duke, one of the owners of the International Gem & Jewelry Show, Inc. ("InterGem"). In his affidavit, Mr. Duke states that, during a telephone conversation, Mr. Hidalgo told him that he believed J. Kugel was selling counterfeit Hidalgo jewelry. Counter-Pl.'s Resp. Mot. Summ. J., Ex. A, ¶ 4. InterGem has a strict policy prohibiting the sale of counterfeit jewelry at its shows. *Id.* ¶ 1. At the next jewelry show, Mr. Duke used a jeweler's loop to examine J. Kugel's Hidalgo jewelry and determined that it appeared authentic. *Id.* ¶ 4. Mr. Duke reported to Mr. Hidalgo the results of his examination, thereby making Mr. Hidalgo aware that J. Kugel's Hidalgo jewelry appeared to be genuine. *Id.* Mr. Duke also states that before March 2005 Mr. Hidalgo told him that he had determined that the rings Lerman bought from J. Kugel were authentic. *Id.* ¶ 5. During another conversation with Mr. Hidalgo in June 2005, Mr. Duke learned that Mr. Hidalgo knew J. Kugel's Hidalgo rings were genuine, but that Mr. Hidalgo's attorney was pushing him to pursue the case against J. Kugel. *Id.* ¶ 6.[2]

J. Kugel further supports its argument by Hidalgo's easily-searchable computer records that show, in June 2004, Hidalgo sold one ring in style number RS7217 and two in style number RS6932 in size 7 ½ to Casino. This documentation confirms Lerman's purchase of an authentic Hidalgo ring as Casino was an authorized dealer of Hidalgo

---

[2] It is noteworthy that Hidalgo's state court case against Julie A. Kugel (who was part owner of J. Kugel) was ultimately dismissed on December 8, 2005, under Fla. R. Civ. P. 1.420(E) for lack of prosecution.

jewelry doing business with J. Kugel.  J. Kugel further alleges that Mr. Hidalgo knew that the purple enamel color that Lerman ordered often appeared darker on a yellow gold ring than a white gold ring and that Mr. Hidalgo deliberately chose not to have it tested to determine whether it was authentic.  Lastly, J. Kugel states that Lerman paid $950 for her rings, which is substantially more than their wholesale price of $490, which is further evidence that the Hidalgo ring was clearly authentic.

The facts set forth here are disputed by the parties.  Most significantly, Mr. Hidalgo denies ever having the alleged conversations with Arnold Duke.  There is also a question as to Hidalgo's knowledge regarding J. Kugel's purchase of Hidalgo rings from Casino and the change in the purple enamel color on yellow gold rings as opposed to white gold rings.

If one looks at the facts through J. Kugel's lenses, there appears to be more than sufficient evidence to prove that a wrongful seizure may indeed have taken place.  Yet, from Hidalgo's perspective, even those facts may not be enough to show bad faith because they claim to have always contended that J. Kugel's distribution of all their Hidalgo merchandise was unauthorized and in violation of Hidalgo's trademarks and copyrights.

In the end, however, we find that all these issues of fact are material and very much in dispute, thus precluding summary judgment.  What Hidalgo knew or should have known at the time, as well as its purported good faith in obtaining the seizure order, must be weighed and determined by the trier of fact at trial. Accordingly, summary judgment should be denied on J. Kugel's wrongful seizure claim.

### B.     *Count II - Slander Per Se*

In his motion, Mr. Hidalgo asks the Court to enter summary judgment in his favor on J. Kugel's claim based on slander per se.  Mr. Hidalgo first denies ever making any slanderous statement to Arnold Duke.  He then asserts that, even if the alleged slanderous statement to Arnold Duke was made, it was ultimately determined to be truthful.  Finally, Mr. Hidalgo argues that all other statements were made during the course of a judicial proceeding and are, therefore, privileged.

J. Kugel attaches to its response in opposition to summary judgment an affidavit signed by Arnold Duke, stating in pertinent part: "During a telephone conversation in 2004, Silvio Hidalgo told me that he believed J. Kugel Designs was selling counterfeit Hidalgo jewelry." [D.E. 141, Ex. A, ¶ 4.]  J. Kugel also asserts that Mr. Hidalgo told Lerman that the rings she purchased from J. Kugel were counterfeit.  And, J. Kugel argues that the loud manner in which Mr. Hidalgo executed the seizure warrant at the International Gem and Jewelry Show, thereby informing customers and vendors of the false allegations concerning J. Kugel's jewelry, also constitutes slander per se.

In support of this last argument, J. Kugel attaches the affivadit of David Demarzio, which states in relevant part:

> The following persons were present during the seizure: three United States Marshals, Lee Baughman, who is the show manager for the International Gem & Jewelry Show, the attorney for Hidalgo Corp. and the attorney's friend. [] The attorney representing Hidalgo Corp. insisted that the seizure take place during the show while other exhibitors, vendors and customers were in the immediate area. The attorney acted in a loud disruptive manner and drew unnecessary attention to the incident. [] The attorney continuously made snide and unnecessary comments towards Mr. Sabin during the course of the seizure.

[D.E. 141, Ex. F, ¶¶ 5, 10, 11.]

In his reply, Mr. Hidalgo *for the first time* asserts the legal argument that a statement of belief cannot be actionable as slanderous; thus, his alleged statement to Arnold Duke cannot constitute slander.³ He then argues that J. Kugel mischaracterizes his deposition testimony regarding his statements to Lerman. Mr. Hidalgo asserts that he told Lerman that he believed the jewelry was counterfeit based on the color of the enamel, which did not appear to be one of the colors Hidalgo uses when manufacturing rings. Mr. Hidalgo also argues that, even if slanderous statements were made during the execution of the search warrant, they could not have been made by him as he was not present.

Mr. Hidalgo finally argues that J. Kugel has not shown that the alleged slanderous statements satisfy the requirements of slander per se. He cites case law holding that imputing criminal conduct to another is slander per se and then asserts that the sale of counterfeit goods is not criminal, but merely a violation of the Lanham Act. Furthermore, Mr. Hidalgo argues that J. Kugel has failed to set forth a basis for a claim as it admitted that it has not been damaged as a result of the alleged statements.

At the outset, J. Kugel does not have to incur damages as a result of the slander. "In slander *per se* actions, general damages are presumed . . . ." *Hoch v. Rissman, Weisberg, Barrett*, 742 So. 2d 451, 457 (Fla. 5th DCA 1999); Restatement (Second) of Torts § 570 (1977). Moreover, a statement that a person has committed a crime or done something illegal constitutes slander per se. *Scott v. Busch*, 907 So. 2d 662, 667 (Fla. 5th

---

³ Mr. Hidalgo clearly violated S.D. Fla. L.R. 7.1.C by raising this issue for the first time in his reply. Because Mr. Hidalgo does not argue this point in his original motion, we cannot consider this argument as J. Kugel has been deprived of an opportunity to respond.

DCA 2005); *Hoch v. Rissman, Weisberg, Barrett*, 742 So. 2d 451, 457 (Fla. 5th DCA 1999) ("An oral communication that imputes to another conduct, characteristics or a condition incompatible with the proper exercise of his lawful business, trade, profession or office is slander *per se*."). A violation of the Lanham Act, by this standard, would clearly constitute unlawful conduct.

We also note that, under traditional agency law, principals are liable when their agents act with apparent authority and commit torts. *American Soc'y of Mech. Eng'r, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 565-66 (1982) ("Also, if an agent is guilty of defamation, the principal is liable so long as the agent was apparently authorized to make the defamatory statement.").

In this case, however, Mr. Hidalgo cannot be liable for any slanderous statements made by Hidalgo Corp.'s lawyer during the execution of the seizure warrant as there is no record evidence that the lawyer was already representing Mr. Hidalgo. The record supports only a finding that the lawyer only became Mr. Hidalgo's agent after J. Kugel filed its counterclaim, suing Mr. Hidalgo personally for the tort of slander per se. It is only at that time that Mr. Hidalgo can be subjected to liability for the lawyer's slanderous statements.[4]

Having analyzed these preliminary matters, we now turn to the alleged actionable statements, which are those Mr. Hidalgo allegedly made to Arnold Duke and Lerman. The record presents genuine issues of material fact concerning these allegedly defamatory

---

[4] The lawyer's statements during the execution of the seizure may also be privileged, but the Court does not reach that issue as it is not necessary for the resolution of the motion.

statements. First, Mr. Hidalgo denies ever having made the statement to Arnold Duke and argues that his statements to Lerman were mischaracterized. His credibility is obviously at issue and not appropriate for determination by way of summary judgment.

Second, if the statements were made as alleged by J. Kugel, then they would be per se slanderous. But it would still then be necessary to determine whether there was pending litigation between the parties at the time the statements were made, in light of Mr. Hidalgo's privilege defense. For example, Arnold Duke's affidavit states that Mr. Hidalgo contacted him in late 2004. Although this case was filed on February 17, 2005, there was a state court action pending as late as December 22, 2005, which had been filed approximately one year earlier. If Mr. Hidalgo's statements were made at a time when either case was pending, they may indeed not be actionable. *See Fariello v. Gavin*, 873 So. 2d 1243 (Fla. 5th DCA 2004) ("This court has recognized that statements made 'in connection with' or 'in the course of' an existing judicial proceeding are protected by absolute immunity, even if they are not necessarily made in court or under oath."); *Stucchio v. Tincher*, 726 So. 2d 372, 374 (Fla. 5th DCA 1999) ("Thus for an absolute privilege to exist, the question is not whether the statement was compelled or under oath; the question is merely whether the statement was made 'in connection with' or 'in the course of' an existing judicial proceeding.").

Accordingly, the record simply does not support granting summary judgment on this claim as a matter of law. We find, therefore, that this claim is properly resolved by the trier of fact at trial and not by this Court on summary judgment.

C.     *Count III - Conversion*

Hidalgo seeks summary judgment in its favor on J. Kugel's conversion claim, arguing that it seized the jewelry from J. Kugel pursuant to this Court's Order, which privilege thereby nullifies a state law conversion claim.

There is no dispute that the Court entered an ex parte seizure Order pursuant to the Lanham Act. The Lanham Act does not expressly preempt state common law causes of action. *E.g., Macia v. Microsoft Corp.*, 152 F. Supp. 2d 535, 540 (D. Vt. 2001). The Act "may preempt state law by implication, however, if the state law is inconsistent with or frustrates the objectives of the federal law." *Id.*; *Mobile Oil Corp. v. Virginia Gasoline Marketers & Auto. Repair Ass'n., Inc.*, 34 F.3d 220, 226 (4th Cir. 1994) ("Federal law may preclude state law that is inconsistent with or frustrates the objectives of federal law."); *Storer Cable Commc'n v. City of Montgomery, Ala*, 806 F. Supp. 1518, 1540 (M.D. Ala. 1992) ("The [Lanham] Act preempts only those state laws which directly conflict with its provisions or purposes by permitting an erosion of trademark rights.").

The Lanham Act provides plaintiffs with injunctive relief ". . . to prevent fraud and deception in [ ] commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks . . . ." 15 U.S.C. § 1127. J. Kugel's conversion claim against Hidalgo based on Hidalgo's execution of this Court's Order, issued pursuant to the Lanham Act, 15 U.S.C. § 1116(d)(1)(A), plainly conflicts with the objectives of the Act as it seeks to trump the injunctive relief provided by the Act. Thus, a lawfully issued seizure order cannot possibly give rise to a competing state law claim for conversion. Notably, J. Kugel did not rely upon any authorities to the contrary.

11

If a seizure order was unlawfully or improperly issued, however, the Lanham Act already recognizes the potential prejudice that its draconian injunctive remedies may provide, inasmuch as it also provides a claim for wrongful seizure, codified at 15 U.S.C. § 1116(d)(11).  Clearly, J. Kugel's wrongful seizure claim (which should remain viable through trial) is the proper avenue for relief from any alleged abuse by Hidalgo of the extraordinary injunctive relief the Lanham Act provides.  A state law conversion claim has never been recognized as an acceptable substitute or alternative remedy for that type of relief.  Summary judgment as to this claim should be granted as a matter of law.

## IV.  CONCLUSION

It is hereby **RECOMMENDED** that Counter-Defendant's Verified Motion for Summary Judgment [D.E. 133] be **GRANTED IN PART AND DENIED IN PART**.  The motion should be granted with respect to Count III of J. Kugel's counterclaim for conversion, but denied with respect to all other claims raised in the counterclaim.[5]

**DONE AND ORDERED** in Chambers at Miami, Florida, this 6th day of November, 2006.

_____
EDWIN G. TORRES
United States Magistrate Judge

cc:   Honorable Adalberto Jordan
      All Counsel of Record

---

[5] Pursuant to Local Magistrate Rule 4(b), the parties have **ten (10)** days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Adalberto Jordan, United States District Judge.  Failure to timely file objections shall bar the parties from a de novo determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein.  *R.T.C. v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger,* 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright,* 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).