UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO: 05-20476-CIV-JORDAN
MAGISTRATE JUDGE KLEIN

HIDALGO CORP.,

    Plaintiff,

v.

J. KUGEL DESIGNS, INC.,
JULIE SABIN a/k/a JULIE A.
KUGEL a/k/a JULIE K.
MOSKOWITZ, and ROBERT SABIN,

    Defendants.
_____/

**PLAINTIFF HIDALGO CORP.'S OBJECTIONS TO**
**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**TABLE OF CONTENTS**

**Page No.**

| | | |
|---|---|---|
| **I.** | PRELIMINARY STATEMENT………………………………………. | 1 |
| **II.** | FACTUAL BACKGROUND……….…………………………………. | 2 |
| **III.** | STANDARD OF REVIEW…………………………………………..... | 4 |
| **IV.** | ARGUMENT………………………………………………………… | 5 |
| | A.   THE MAGISTRATE ERRED BY FINDING AN ISSUE OF CONTESTED FACT EXISTED AS TO ACTUAL CONSUMER CONFUSION.  BASED UPON THE UNDISPUTED EVIDENCE AND UPON APPLICATION OF THE <u>POLAROID</u> FACTORS, THE COURT MUST PRESUME IT WAS LIKELY THAT CONSUMERS WERE CONFUSED AS TO THE DEFENDANTS' ASSOCIATION WITH HIDALGO…………………………… | 5 |
| | B.   THE MAGISTRATE ERRED BY NOT FINDING THE SALE OF CUSTOM ORDERS CAN NEVER FALL WITNESS WITHIN THE NARROW PROTECTIONS OF THE FIRST SALE DOCTRINE…………………………………………………… | 10 |
| **V.** | CONCLUSION…………………………………………………………... | 17 |

# TABLE OF AUTHORITIES

Page No.

## CASES

Babbit Electronics v. Dynascan,
828 F.Supp 944 (S.D. Fla. 1993)…………………………………………….  6

Babbit Electronics, Inc. v. Dynascan Corporation,
38 F.3d 1161 (11th Cir. 1994)………………………………………............  8

Bandag, Inc. v. Al Bolser's Tire Stores, Inc.,
750 F.2d 903 (Fed Cir. 1984)…………………………………………………  11

Champions Golf Club, Inc. v. The Champions Golf Club, Inc.,
78 F.3d 1111 (6th Cir. 1996)………………………………………………..  12

Council of Better Business Bureaus, Inc. v. Bailey & Associates, Inc.,
197 F. Supp 2d 1197 (E.D. Miss 2002)……………………………………..  8, 9

El Greco Leather Products Co. v. Shoe World, Inc.,
806 F.2d 392 (2nd Cir. 1986)……………………………………………………  12

Four Seasons Hotel v. Conorcio Barr,
267 F. Supp. 2d 1268 (S.D. Fla. 2003)………………………………………………  5, 6, 8

Golden Voice Tech. & Training, L.L.C. v. Rockwell Elec. Commerce Corp.,
267 F.Supp. 2d 1178 (M.D. Fla. 2002)………………………………………  4

H.L. Hayden Co. v. Siemans Medical Systems, Inc.,
879 F.2d 1005 (2nd Cir. 1989)………………………………………………..  9

Hunting World v. Reboans, Inc.,
1992 U.S. Dist. Lexis 17880 (N.D. Cal. 1992)………………………………  9

J.B. Williams v. Le Conte Cosmetics, Inc.,
523 F.2d 187 (9th Cir. 1975), cert. denied, 424 U.S. 913,
47 L.Ed. 2d 317, 96 S. Ct. 1110 (1976)………………………………………  12

Jeffrey S. v. State Bd. of Educ.,
896 F.2d 507 (11th Cir. 1990)…………………………………….…………  4

Lois Sportswear, U.S.A., Inc. v Levi Strauss & Co.,
799 F.2d 867 (2nd Cir. 1986)…………………………………………………  7

Montgomery v. Noga,
    168 F.3d 128 (11th Cir. 1999)……………………………………………… 9

Nikon Inc. v. Ikon Corp.,
    987 F.2d 91 (2nd Cir. 1993)…………………………………………….... 5

Park 'n Fly, Inc. v. Dollar Park and Fly, Inc.,
    469 U.S. 189, 198, 105 S.Ct. 658, 831 L.Ed. 2d. 582 (1985)…………………. 11

Polaroid Corp. v. Polarad Electronics Corp.,
    287 F.2d 492 (2nd Cir. 1961)……………………………………………. 1, 3, 5, 6, 8

Rodeo Collection, Ltd. v. West Seventh,
    812 F.2d 1215 (9th Cir. 1987)…………………………………………… 12

Rosenthal AG v. Ritelite, Limited,
    986 F.Supp 133 (E.D.N.Y. 1997)…………………………………….... 8

Ross Bicycles Inc. v. Cycles USA Inc.,
    765 F.2d 1502 (11th Cir. 1985)………………………………………….. 10

Sebastian International, Inc. v. Longs Drug Stores Corporation,
    53 F.3d 1073 (9th Cir. 1995)…………………………………………….. 10, 11

Stormor v. Howard Johnson,
    587 F.Supp. 275 (W.D. Mich. 1984)…………………………………….. 9, 11

The Sports Authority Inc. v. Prime Hospitality Corp.,
    89 F.3d 955 (2nd Cir. 1996)……………………………………………… 6, 7

## STATUTES

15 U.S.C. § 1065………………………………………………………………. 6
15 U.S.C. § 1115 (b)…………………………………………………………… 6
15 U.S.C. §1114 Note 3………………………………………………………... 11
15 U.S.C. §1125 Note 4………………………………………………………... 5
15 U.S.C. §1125(a)…………………………………………………………….. 8, 10, 11
28 U.S.C. §636(b)(1)(C) (2005)……………………………………………….. 1, 4

## OTHER AUTHORITIES

Magistrate Rules 1(d) and 4(b), S.D.Fla.L.R……………………………………… 4

## I.  PRELIMINARY STATEMENT

The Report and Recommendation ("R&R") issued in this matter on November 6, 2006, makes a plain error of law based upon undisputed facts. The R&R has misconstrued the first sale doctrine inconsistent with the prior Report & Recommendation entered by Magistrate Judge Klein (DE 61) and inconsistent with this Court's Order approving Judge Klein's R&R (DE 61).

The R&R correctly acknowledges that the Defendants set up a sham, straw man or front (Casino) in order to obtain legitimate trademarked goods from Hidalgo. Casino then transferred the goods to the Defendants in order to satisfy custom orders of goods that Defendants have previously solicited utilizing the Plaintiff's trademark, inducing consumers to believe that they were associated with Hidalgo. However, the Magistrate Judge then erred in finding an issue of contested fact existed as to whether or not the consumers were actually confused that the Defendants were associated with Hidalgo. The law only requires this Court to find a reasonable possibility of consumer confusion which must be presumed based upon the Polaroid factors. Additionally, the Magistrate erred by not finding that Defendants' solicitation of custom orders of goods does not fall within the narrow confines of the first sale doctrine.

## II. FACTUAL BACKGROUND

The facts set forth in Plaintiff's Verified Motion for Summary Judgment (DE 132, 133) accurately sets forth the unrebutted facts at issue. The most relevant facts here are the following:

From 2001 to 2005, J. Kugel attended many jewelry shows where it sold Hidalgo trademarked merchandise. The Defendants would display Hidalgo merchandise in a homogeneous display case of Hidalgo jewelry. Within the display case would be: (a) a plastic sign created by J. Kugel that said "Hidalgo"; (b) the official Hidalgo sales brochure that contained the Hidalgo logo; and (c) a handwritten sign that either said "Entire line discount 40%-50%" or "40%-50% discount from retail" (See Sabin Deposition 2/8/06, Page 258, Line 5 and Page 260, Line 18). Defendants would also display and use the official Hidalgo sales literature and the official Hidalgo price list which would indicate the price that Hidalgo would charge its authorized representatives and the suggested retail price (See Sabin Deposition 2/8/06, page 260, line 16). That information was only provided to authorized Hidalgo representatives.

Defendants solicited and accepted from its retail customers custom orders of Hidalgo merchandise, i.e., a particular Hidalgo ring in a particular size. Any size other than a standard 6½, was a custom order that would have to be manufactured by Hidalgo after the sale (See Sabin Deposition 2/8/06, page 263, line 15 and page 264, line 20).

After Defendants accepted a custom order, it would send a purchase order to Casino. Casino would then fax a purchase order to Hidalgo describing the merchandise that Defendants had already sold (See Sabin Deposition 2/8/06, page 264, line 23 and page 265, line 7). These purchase orders would be sent on a letterhead stating "Casino Jewelry at The Sands Hotel." The purchase orders were usually signed by "Richard Lewis," Defendants' alias name. (See Sabin Deposition 2/8/06, page 267, line 1). As this Court has found, Defendants used fraudulent means

2

to establish Casino as a front. On custom orders, Defendants needed Casino to subsequently obtain the jewelry from Hidalgo (See Sabin Deposition 12/12/05 at page 69 line 1).

In the R&R, Judge Torres acknowledged the foregoing facts were undisputed. See R&R at Paragraphs 3 through 4. Hidalgo objects to the R&R on the following grounds:

1. The Magistrate erroneously found that the Defendants' use of the banner created an issue of fact as to consumer confusion where the law mandates that Hidalgo need only show the probability that consumer confusion existed, which the Court can presume by the application of the Polaroid factors; and

2. The Magistrate erred by ignoring the legal requirement that the sale of custom goods by an unauthorized person can never satisfy the first sale doctrine.

### III.  STANDARD OF REVIEW

The Court "shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. §636(b)(1)(C) (2005).  See also, Jeffrey S. v. State Bd. of Educ., 896 F.2d 507, 512 (11th Cir. 1990) ("The *de novo* review requirement is essential to the constitutionality of section 636."). The District Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate."  28 U.S.C. §636(b)(1)(C).  See Golden Voice Tech. & Training, L.L.C. v. Rockwell Elec. Commerce Corp., 267 F.Supp. 2d 1178, 1181 (M.D. Fla. 2002).  In addition, "the judge may also receive further evidence or recommit the matter to the magistrate judge with instructions."  28 U.S.C. §636(b)(1)(C); see also Magistrate Rules 1(d) and 4(b), S.D.Fla.L.R.

### IV. ARGUMENT

A. THE MAGISTRATE ERRED BY FINDING AN ISSUE OF CONTESTED FACT EXISTED AS TO ACTUAL CONSUMER CONFUSION. BASED UPON THE UNDISPUTED EVIDENCE AND UPON APPLICATION OF THE <u>POLAROID</u> FACTORS, THE COURT MUST PRESUME IT WAS LIKELY THAT CONSUMERS WERE CONFUSED AS TO THE DEFENDANTS' ASSOCIATION WITH HIDALGO

Plaintiff alleges that the Defendants acted in a manner that was likely to deceive the public to believe that it was authorized to sell Hidalgo merchandise, which was likely to cause confusion or cause mistake or to deceive as to: (a) the quality of the merchandise sold by the Defendants under the Hidalgo mark, including the non-genuine diamond outer bands; (b) the affiliation, connection or association of Defendants with Plaintiff; and/or (c) the origin, sponsorship or approval by Plaintiff of Defendants' sale of Hidalgo goods.

15 U.S.C. §1125(a) states:

> "any person who, on or in connection with any goods or services or any container of goods, uses in commerce any word, term, name, symbol or device or any combination thereof or any false designation of origin, false or misleading or fact, or false of misleading representation of fact, which . . . (1) is likely to cause confusion, or to cause mistake, <u>or to deceive as to the affiliation, connection, or association of such person with another person, or as the origin, sponsorship, or approval of his/her goods</u>, services or commercial activities by another person . . . shall be liable in a civil action" (emphasis added).

It is undisputed that the Hidalgo registered trademark is valid and entitled to protection under the Lanham Act. <u>Nikon Inc. v. Ikon Corp.</u>, 987 F.2d 91, 94 (2nd Cir. 1993). The purpose of the Lanham Act is two fold; to protect consumers from confusion, mistake or deception regarding the nature and quality of goods and services and second, to prevent impairment of good will and reputation of the trademark owner. <u>Four Seasons Hotel v. Conorcio Barr</u>, 267 F. Supp. 2d 1268, 1368 (S.D. Fla. 2003). One of the most valuable and important protections afforded by the Lanham Act is the right of the holder of the mark to control the quality of goods

5

manufactured and services given under the holders trademark. Four Seasons at 1328.

As a threshold matter, the Defendants have not disputed the strength of Plaintiff's mark, which is registered on the principal register of the USPTO and is incontestable. See 15 U.S.C. § 1065, 15 U.S.C. § 1115 (b). In assessing the likelihood of confusion, the Court should consider the factors first enunciated in Polaroid Corp. v. Polarad Electronics Corp., 287 F.2d 492 (2nd Cir. 1961).[1] These factors are: (1) strength of Plaintiff's mark; (2) similarity between the Plaintiff's mark and the challenged mark; (3) competitive proximity of the products; (4) likelihood that the Plaintiff will eventually produce a product like the challenged product thereby bridging the gap; (5) actual confusion; (6) Defendants' good faith or lack thereof; (7) quality of the Defendants' product as compared to the Plaintiff's product; and (8) relative sophistication of prospective and actual purchasers of the product. See Polaroid, 287 F.2d at 495. "Intent to copy creates a rebuttable presumption of likelihood of confusion." Babbit Electronics v. Dynascan, 828 F. Supp 944 (S.D. Fla. 1993). This Court correctly determined Defendants intentionally copied Hidalgo's mark on the signs displayed by Defendant within its display case. Since the Defendants are utilizing the Plaintiff's exact mark, the Court need only focus on factors six and seven and the Defendants must present sufficient credible evidence to overcome the presumption of infringement. Here, the Defendants' allegation that they displayed a banner sign behind the display case does not satisfy its burden.

Defendants' Good Faith (Factor 6).

Under this factor, the Court should look whether the Defendants utilized the mark with the intention of capitalizing on the Plaintiff's reputation and good will and thus created confusion as to whether the Plaintiff has endorsed the Defendants' actions. See The Sports Authority Inc.

---

[1] In the R&R, the Court adopted these factors, from a later decision. See Lipsher v. LRP Publishing Inc., 266 F.3d 1305 (11th Cir. 2001).

6

v. Prime Hospitality Corp., 89 F.3d 955 (2nd Cir. 1996). After asking and being denied express authorization and in spite of a state lawsuit to stop them, the Defendants created a scheme to establish Casino as a "front" and used Plaintiff's brochures and sales materials containing Hidalgo's mark which are only given to authorized representatives.

Quality of Defendants' Product (Factor 7).

This factor is primarily concerned with whether Plaintiff's reputation could be jeopardized by Defendants' actions. See Lois Sportswear, U.S.A., Inc. v Levi Strauss & Co., 799 F.2d 867 (2nd Cir. 1986). Defendants put on no evidence to challenge Plaintiff that its reputation was harmed by its mere association with Defendants and its gypsy operation. Further, the Defendants sold its customers generic diamond outer bands, rather than genuine Hidalgo diamond bands. The only logical explanation for Defendants' actions is that their tactics were designed to induce its customers to believe these bands were genuine Hidalgo as not a single invoice of Defendants to its customers indicated it informed its customers that the diamond outer bands were non-Hidalgo goods.

On this point, the Court must accept that it is likely a consumer would be confused by Defendants' acts. After all, the genuine Hidalgo inner bands were displayed on "display fingers" with the fake outer bands, in a display case of homogeneous Hidalgo goods, with brochures showing sets of Hidalgo rings (inner and outer bands). Defendants did not challenge Plaintiff's statement that it has spent in excess of $5,000,000.00 advertising these sets of stackable rings. Defendants' claim that it displayed a banner sign that said "We are a non-authorized dealer of name brand designer jewelry." This sign cannot preclude any possibility that consumers are not confused as to the source of the non-genuine diamond outer bands or that Defendants are associated with Plaintiff because the Defendants nevertheless accepted custom orders of

7

Hidalgo's goods.

The significance of the Defendants acts and the minor character of an infringement does not provide a shield to Defendants, for the Lanham Act does not permit a small business to nibble away or dilute the value of the goodwill which the Plaintiff has established. See Four Seasons at 1329. Although, the diamond bands sold by J. Kugel are inferior to Hidalgo's diamond bands, the Court need not make this determination because the bands are simply not genuine Hidalgo. A finding of inferior quality of non genuine goods is not a prerequisite to a finding of infringement. See Babbit Electronics, Inc. v. Dynascan Corporation, 38 F.3d 1161, 1180 (11th Cir. 1994) and Four Seasons at 1329.

Defendants' actions of selling Hidalgo merchandise at the traveling shows damages Plaintiff's reputation and lowers the public perception of the quality of its brand.

Section 1125 extends protection against use of a Plaintiff's mark on any product or services which would reasonably be thought by the buying public to come from the same source or thought to be affiliated with, connected to or sponsored by the trademark owner. See Council of Better Business Bureaus, Inc. v. Bailey & Associates, Inc., 197 F. Supp 2d 1197, 1213 (E.D. Miss 2002).

Balancing the Factors.

The Court may grant summary judgment even if issues of fact regarding actual confusion, good faith and the quality of the defendants' product exist, since a finding of actual confusion is not a prerequisite to a finding of confusion under the Polaroid test. See Rosenthal AG v. Ritelite, Limited, 986 F.Supp 133 (E.D.N.Y. 1997). Irrespective of whether the goods sold by Defendants are genuine or counterfeit, the Defendants have violated the Lanham Act simply by utilizing the Plaintiff's "Hidalgo" mark, in commerce, without the Plaintiff's permission.

It is undisputed that Defendants used the Hidalgo mark in a display of homogenous Hidalgo merchandise. Such acts must violate the protection afforded to the trademark owner under the Lanham Act.  See, Hunting World v. Reboans, Inc., 1992 U.S. Dist. Lexis 17880 (N.D. Cal. 1992), "genuine goods sold in an unauthorized manner are not genuine for purposes of the Lanham Act," Id. at 5, citing H.L. Hayden Co. v. Siemans Medical Systems, Inc., 879 F.2d 1005 (2nd Cir. 1989).  Also see, Stormor v. Howard Johnson, 587 F.Supp. 275 (W.D. Mich. 1984), "it is now well settled that trademark infringement occurs when a defendant uses the plaintiff's trademark in a manner that suggests that the defendant is affiliated with the plaintiff's company even though the defendant deals in goods of the trademark owner." Stormor at 278.  The intent of Defendants actions is unmistakable.

The Defendants' use of the signs "Hidalgo" and "40%-50% Off Entire Line" indicates that the Hidalgo mark possesses secondary meaning within the marketplace and that J. Kugel carries the entire Hidalgo line.  Defendants intentionally created this impression to its customers to induce them to believe they were affiliated with or endorsed by Plaintiff so that Defendant could accept custom orders of goods not in stock (See Sabin Deposition 2/8/06, page 260, lines 1-18).

Defendants made numerous uses of the registered Hidalgo mark. A counterfeit mark is a mark that is indistinguishable from a registered mark.  An unauthorized person who uses a counterfeit mark has violated sections 32 and 45 of the Lanham Act. See Council of Better Business Bureaus, Inc. at 1219.  Use of a counterfeit mark to induce the public to believe the Defendant is associated with or endorsed by the trademark owner is infringement per se and the Court need not determine if there is actual confusion. See Council of Better Business Bureaus, Inc. at 1222.  As such, Plaintiff has established the prima facie elements of a claim for violation

9

of section 32 and 43 of Lanham Act because Defendants used Plaintiff's exact mark. For this reason, the Magistrate's citation to Montgomery v. Noga, 168 F.3d 128 (11th Cir. 1999) is distinguishable. Likewise, the Magistrate's citation to Ross Bicycles Inc. v. Cycles USA Inc., 765 F.2d 1502 (11th Cir. 1985) is distinguishable. In Ross, the Court considered if the Defendants' mark "ross cruiser" infringed upon the Plaintiff's mark, "Boss Cruiser." There, the Court properly considered the issue of consumer confusion to be an issue for the jury. However, here Defendants used the Plaintiff's exact mark not one that was questionably similar.

      B.      THE MAGISTRATE JUDGE ERRED BY NOT FINDING THE SALE OF CUSTOM ORDERS CAN NEVER FALL WITHIN THE NARROW PROTECTIONS OF THE FIRST SALE DOCTRINE

The Magistrate correctly found that the first sale doctrine does not apply when a reseller of genuine goods does something more that simply reselling the goods. Citing Stormor at 279. Evidence that Defendants solicited custom orders and then placed orders of these goods with Hidalgo is undisputed. The Magistrate at Page 18 merely states the method and manner by which Defendants sold the jewelry creates an issue of fact. However, the only fact cited by the Magistrate is the use of the disclaimer banner. However, the banner does not contradict the undisputed evidence that the Defendants accepted custom orders.

In Stormor, the Court defined narrow limits to the first sale doctrine, holding a defendant's sale of genuine trademarked products violated Section 1125 if the defendant's use of plaintiff's trademark suggested to potential purchasers that the defendant was an authorized dealer for those products. The Stormor Court acknowledged that the unauthorized sale of a genuine trademark product without more does not constitute trademark infringement, but held defendants use of plaintiff's promotional material (to advertise the availability of the plaintiff's product such as the use of Plaintiff's mark in the display case) was outside of the safe harbor. In

10

Sebastian International, Inc. v. Longs Drug Stores Corporation, 53 F.3d 1073 (9th Cir. 1995), the Court limited the first sale doctrine to those cases where a reseller "does nothing more than stock, display and resale a producers product . . . absent more culpable conduct on the part of the seller . . . (but additional) conduct by the seller other than merely stocking and reselling genuine trademarked products may be sufficient to support a cause for trademark infringement." Sebastian at 1076. Likewise, in Bandag, Inc. v. Al Bolser's Tire Stores, Inc., 750 F.2d 903, (Fed Cir. 1984), the Court found the first sale doctrine did not apply where the defendant used the plaintiff's logo in an advertisement which would falsely lead a consumer to conclude that defendant was one of plaintiff's authorized representatives, even though there was no evidence the defendant made any actual use of the plaintiff's mark other than in the advertisement nor in any manner that could be construed as a representation that it was an authorized franchisee of the plaintiff.

Stormor and Sebastian demonstrate the limited actions allowed by a reseller under the first sale doctrine. In these cases, the reseller merely purchased the goods, and then placed the goods on the shelves for resale.

Defendants have made at least three advertisements using the Plaintiff's mark, displayed within a homogeneous display case of Hidalgo jewelry. The message of the advertisements cannot be viewed in a vacuum, but must be viewed together with the Hidalgo sales materials that Defendants used (which is only provided to authorized representatives). By taking custom orders, Defendants clearly proffered its association with Plaintiff and the very act of soliciting custom orders exceeds the narrow safe harbor of the first sale doctrine.

Plaintiff has the right to determine who and in what manner it licenses rights to utilize and exploit its registered trademark. See 15 U.S.C. §1114 Note 3, 15 U.S.C. §1125 Note 4, Park

11

'n Fly, Inc. v. Dollar Park and Fly, Inc., 469 U.S. 189, 198, 105 S.Ct. 658, 831 L.Ed. 2d. 582 (1985) (a reseller has created the likelihood of confusion by leading consumers to believe they are authorized distributors of a trademark product even when they are not by "passing off" an inferior product as the trademark owner's product or by otherwise trying to capture business by using the plaintiffs trademark in a misleading fashion). Also see, Champions Golf Club, Inc. v. The Champions Golf Club, Inc., 78 F.3d 1111 (6th Cir. 1996) and El Greco Leather Products Co. v. Shoe World, Inc., 806 F.2d 392 (2nd Cir. 1986), holding genuine goods are not genuine for purposes of the Lanham Act if the goods are not sold under the rules prescribed by the trademark holder . . . "one of the most valuable and important protections afforded by the Lanham Act is the right to control the quality of the goods manufactured and sold under the holder's trademark." El Greco at 395.  The fact that Defendants solicited custom orders is enough for the Court to find infringement.

Defendants admit they used the sales brochures and the official price list created by Plaintiff in order to solicit and accept custom orders, which only authorized Hidalgo representatives can solicit. Custom orders cannot, by definition, satisfy the narrow and specific requirements of the first sale doctrine because goods are not sold from stock.  On this point, Defendants could not document a single sale by Defendants of Hidalgo merchandise by Defendants from stock (see Sabin Deposition 2/8/06, page 316, line 12).  Plaintiff is not required to demonstrate any express representations made by Defendants regarding such an association or affiliation.[2]  Rather, the burden to show legitimacy is on the Defendants. See J.B. Williams v. Le Conte Cosmetics, Inc., 523 F.2d 187, 193 (9th Cir. 1975), cert. denied, 424 U.S. 913, 47 L.Ed. 2d 317, 96 S. Ct. 1110 (1976) and Rodeo Collection, Ltd. v. West Seventh, 812 F.2d 1215 (9th Cir.

---

[2] Sabin testified at the injunction hearing that he never held himself as an authorized Hidalgo representative and the Court determined his testimony was not credible on this point.  See Magistrate Klein Report and Recommendation.

12

1987).  These Defendants presented no evidence (other than the banner) that they acted within the narrow confines of the first sale doctrine.

## VI. CONCLUSION

Based upon the foregoing, Plaintiff's Motion for Summary Judgment should be granted.

**CERTIFICATE OF SERVICE**

I hereby certify that on November 16, 2006, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

    WOLFE & GOLDSTEIN, P.A.
    Counsel for Plaintiff, Hidalgo Corp.
    100 S.E. Second Street
    Suite 3300
    Miami, Florida 33131
    Telephone:    (305) 381-7115
    Facsimile:    (305) 381-7116

    By: /s/ Richard C. Wolfe
        RICHARD C. WOLFE
        Fla. Bar No: 355607

**SERVICE LIST**
Hidalgo Corp. versus J. Kugel Designs, Inc., Julie Sabin a/k/a
Julie A. Kugel a/k/a Julie K. Moskowitz, and Robert Sabin
Case No. 05-20476-CIV-JORDAN/TORRES
United States District Court, Southern District of Florida

| | |
|---|---|
| John Galardi Gale, Esq. | Roberto Villasante, Esq. |
| 2400 South Dixie Highway | rvillasante@villasantelaw.com |
| Suite 100 | Roberto Villasante P.A. |
| Miami, Florida 33133 | 4000 Ponce De Leon Blvd. |
| Telephone: (305) 856-4111 | Suite 470 |
| Facsimile: (305) 856-4030 | Coral Gables, Florida 33146 |
| Attorneys for Defendants, J. Kugel Designs, Inc., Julie Sabin a/k/a Julie A. Kugel a/k/a Julie K. Moskowitz, and Robert Sabin | Telephone: (305) 373-6548 |
| | Facsimile: (305) 373-6568 |
| | Attorneys for Defendants, J. Kugel Designs, Inc., Julie Sabin a/k/a Julie A. Kugel a/k/a Julie K. Moskowitz, and Robert Sabin |
| Served by Facsimile and Regular Mail | Served by Facsimile and Regular Mail |

H:\Hidalgo Corp\v. Kugel, et al\pldgs\objections to report and recommendations.doc