UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 05-20476-CIV-JORDAN

| | |
|---|---|
| HIDALGO CORPORATION, | ) |
| Plaintiff | ) |
| vs. | ) |
| J. KUGEL DESIGNS, INC., JULIE SABIN a/k/a JULIE A. KUGEL a/k/a JULIE K. MOSKOWITZ, and ROBERT SABIN a/k/a ROBERT SABATINO, | ) |
| Defendants | ) |
| J. KUGEL DESIGNS, INC., | ) |
| Counter-Plaintiff, | ) |
| vs. | ) |
| HIDALGO CORPORATION and SILVIO HIDALGO, individually, | ) |
| Counter-Defendants | ) |

**ORDER ON REPORT AND RECOMMENDATION
ON MOTIONS FOR SUMMARY JUDGMENT**

Hidalgo filed this lawsuit against J.Kugel and individual defendants Julie Sabin and Robert Sabin alleging violations of the Lanham Act, 15 U.S.C. §1114 and §1125 (Counts 1 and 2) and copyright infringement, 17 U.S.C. §501 (Count 3). Hidalgo moved for summary judgment on Counts 1 and 2 of its complaint. The defendants filed a cross-motion for summary judgment on Counts 1, 2, and 3. I referred the motions for summary judgment to Magistrate Judge Torres for a report and recommendation. On November 6, 2006, Magistrate Judge Torres issued a report recommending denial of Hidalgo's motion for summary judgment, and the partial grant and partial denial of the defendants' motion for summary judgment. Hidalgo has filed objections to the report. For the reasons set forth below, the report and recommendation of Magistrate Judge Torres [D.E. 191] is

ratified and adopted. Hidalgo's motion for summary judgment [D.E. 132] is DENIED. The defendants' motion for summary judgment [D.E. 137] is GRANTED IN PART and DENIED IN PART.

## I. STANDARD OF REVIEW

Objections to a magistrate judge's report and recommendation are governed by 28 U.S.C. § 636(b). A district court shall make a de novo determination of those portions of the report and recommendations to which objection is made. *See* 28 U.S.C. § 636(b). *Cf. LoConte v. Dugger*, 847 F.2d 745, 750 (11th Cir. 1988) (when a party files timely and specific objections to a magistrate's finding of facts, district courts have an obligation to conduct a de novo review of the record with respect to the factual issues). A party filing objections must specifically identify those findings or conclusions objected to and the specific basis for such objections. *See State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 369 F.Supp.2d 1296, 1300 (S.D. Fla. 2005) (citing *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988)). If an objection fails to identify the specific findings or conclusions or a specific basis, the district court need not consider it. *Id*. at 1300-01.

Here, Hidalgo has raised objections to Magistrate Judge Torres' report recommending denial of its motion for summary judgment. A motion for summary judgment should only be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In making this assessment, the court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997), and "resolve all reasonable doubts about the facts in favor of the nonmovant." *United States of Omaha Life Ins. v. Sun Life Ins. Co.*, 894 F.2d 1555, 1558 (11th Cir. 1990).

This standard applies with equal force here, even though Magistrate Judge Klien had previously made preliminary findings of fact, which I adopted, in ruling on a motion for a preliminary injunction. Findings of fact made in a preliminary injunction proceeding are not binding at trial, and do not preclude the reexamination of the merits of the lawsuit at trial. *See University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. Given this limited purpose

. . . findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at a trial on the merits."). Therefore, following preliminary injunction proceedings, the parties are free to offer additional evidence in support of final adjudication of the merits of the dispute, and the court (or the jury) may reach opposite conclusions to those previously reached.

## II. BACKGROUND[1]

Hidalgo made two arguments in favor of summary judgment on its Lanham Act claims. First, it argued that J. Kugel infringed its trademark because J. Kugel sold genuine Hidalgo jewelry via custom orders and in doing so misled the public into believing that it was an authorized Hidalgo dealer. Magistrate Judge Torres denied summary judgment on this claim. Applying the "first sale" doctrine, he concluded that there was an issue of fact as to whether J.Kugel's sales of *genuine* Hidalgo jewelry through custom orders violated the Lanham Act. Second, Hidalgo argued that J. Kugel committed trademark infringement by falsely leading consumers to believe that it was an authorized Hidalgo dealer. Magistrate Judge Torres denied summary judgment on this claim as well. He concluded that there was an issue of fact whether J. Kugel misled consumers because its disclaimer stating that it was a "non-authorized dealer of name brand designer jewelry" may have cured any possible suggestion of an association between J. Kugel and Hidalgo. Furthermore, because the liability of the individual defendants depends on the underlying claims, Magistrate Judge Torres also denied summary judgment against the individual defendants.

The defendants filed a cross-motion for summary judgment on Hidalgo's Lanham Act claims. Magistrate Judge Torres recommended that the defendants' motion be denied for the same reason that an issue of fact existed as to J. Kugel's representations about being an authorized dealer. But, Magistrate Judge Torres recommended granting summary judgment in favor of the defendants on Count 3 of the amended complaint. He determined that a copyright violation did not occur as a matter of law since it is undisputed that J.Kugel sold genuine Hidalgo rings and not copies of Hidalgo's "the Hearts Ring."

---

[1] In his report and recommendation [D.E .191], Magistrate Judge Torres provides a review of the relevant background facts and procedural history of this case. I hereby adopt and deem that review of the background facts and procedural history incorporated into this order.

On November 16, 2006, Hidalgo filed its objections to the portion of Magistrate Judge Torres' report and recommendation on Hidalgo's motion for summary judgment. Neither party objected to the portions of the report and recommendation that pertain to the defendants' motion for summary judgment.

### III. ANALYSIS

#### A. INFRINGEMENT BASED ON FALSE ASSOCIATION WITH HIDALGO

Hidalgo first objects to Magistrate Judge Torres' conclusion that there is an issue of fact whether consumers were likely confused that J.Kugel was associated with Hidalgo. Hidalgo argues that J.Kugel misled consumers into believing that J.Kugel was associated with Hidalgo and/or authorized to sell Hidalgo jewelry. There is no question that such deception, if proven at trial, could constitute a violation of the Lanham Act. *See Stormor, a Div. of Fuqua Industries, Inc. v. Johnson*, 587 F.Supp. 275, 278 (D. Mich. 1984) ("It is now well-settled that trademark infringement occurs when a defendant uses the plaintiff's trademark in a manner that suggests that the defendant is affiliated with the plaintiff's company even though the defendant deals in the goods of the trademark owner."). However, not every use of Hidalgo's trademark without its consent amounts to trademark infringement. *Id.* at 278-79. Upon a de novo review of the record, I conclude that there is an issue of fact as to whether J.Kugel's use of Hidalgo's trademark without its consent misled consumers into believing that J. Kugel was associated with Hidalgo.

J.Kugel presented evidence that at its trade shows it would display a large sign (approximately 10 feet wide by 4 feet high) that stated: "to maintain our low prices we are a non-authorized dealer of name brand designer jewelry." *See* Affidavit of Lee Baughman at ¶ 11-12; Affidavit of Jeffrey Wikel at ¶ 5-6. It is certainly possible that this sign, if consistently displayed by J.Kugel in a manner that was visible to its customers, could adequately cure any likely confusion. Significantly, it appears that evidence of this sign was not presented at the preliminary injunction proceedings, and that Magistrate Judge Klien determined that such a sign was helpful to avoid future customer confusion. *See* Amended R&R on Preliminary Injunction at 13 ("[F]or now, in any future displays of Hidalgo jewelry, the Defendants must clearly show that they have no affiliation with Hidalgo. They must prominently display a sign at least equal in size and font to the Hidalgo signs which reads: 'The Seller is not an authorized deal of Hidalgo Jewelry and is not affiliated with Hidalgo Jewelry in any way.").

4

Taking the facts in the light most favorable to the defendants, as I must in analyzing Hidalgo's motion for summary judgment, I conclude that the presence of this sign is sufficient to create an issue of fact as to whether J.Kugel's unauthorized sales of Hidalgo jewelry were "likely to deceive, cause confusion, or result in mistake." *Davidoff & Cie, SA, v. PLD International Corp.*, 263 F.3d 1297, 1302 (11th Cir. 2001). On the other hand, there is also sufficient evidence to create an issue of fact as to whether J.Kugel did mislead its customers notwithstanding the sign. Therefore, Magistrate Judge Torres also correctly recommended that I deny summary judgment in favor of the defendants on this issue.

In its objection, Hidalgo also argues that Magistrate Judge Torres erred in denying summary judgment because J.Kugel's use of Hildalgo's trademark -- by placing the word "Hidalgo" in a display case to indicate that it sells Hidalgo goods -- violated the Lanham Act as a matter of law. Hidalgo misunderstands the law. "An independent dealer may properly advertise that he sells merchandise associated by the public with a well-known trade or service mark so long as this does not mislead customers into thinking that he is an authorized agent of, or directly connected with, the owner of that mark. In order to communicate accurate information about a product, a right is implied to use any mark fairly associated with that product." *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.*, 750 F.2d 903, 910 (Fed. Cir. 1984) (internal quotations omitted). J.Kugel's use of the name Hidalgo, in order to communicate that it was selling Hidalgo goods, is not itself a violation of the Lanham Act. There is an issue of fact, however, whether the form and manner in which J.Kugel used the Hidalgo trademark was likely to confuse consumers into thinking that J.Kugel was associated with or authorized to deal in Hidalgo jewelry.

**B. INFRINGEMENT BASED ON DISPLAY OF NON-GENUINE RINGS IN "HIDALGO" DISPLAY BOX**

Hidalgo further argues that Magistrate Judge Torres erred in failing to conclude that the use of the trademark "Hidalgo" in a display case that held both genuine Hidalgo rings and generic, non-genuine diamond outer bands violated the Lanham Act. There is no dispute that J.Kugel placed a "Hidalgo" sign in a display case that held Hidalgo jewelry on the same display finger as non-genuine diamond outer bands. J. Kugel argues, however, that there was no risk that consumers would mistake the non-genuine diamond bands for genuine Hidalgo diamond bands because it explained the different ring options to its consumers. Specifically, J. Kugel informed its customers that they could

purchase a Hidalgo enamel ring with either the Hidalgo diamond band, with a less expensive generic diamond band or with no diamond bands at all.  *See* Defendants' Response to Hidalgo's Motion for Summary Judgment at 4 (citing deposition of Robert Sabin).  Therefore, there is an issue of fact as to whether consumers were likely to be confused by J.Kugel's display or whether J.Kugel's communications to customers were sufficient to cure any likely confusion.

### C. INFRINGEMENT BASED ON RESALE OF CUSTOM-ORDERED, GENUINE HIDALGO JEWELRY

"[T]he general rule is that trademark law does not apply to the sale of genuine goods bearing a true mark, even if the sale is without the mark owner's consent." *Matrix Essentials, Inc. v. Emporium Drug Mart, Inc., of Lafayette*, 988 F.2d 587, 590 (5th Cir. 1993) (internal quotations omitted).  Applying this general rule, Magistrate Judge Torres determined that he could not conclude as a matter of law that the defendants "commit[ed] trademark infringement merely by reselling the Hidalgo rings they obtained through Casino."  R&R on Motions for Summary Judgment at 16. Hidalgo objects, arguing that this general rule does not apply here because "the [ ] Defendants solicited custom orders [and this fact] is enough for the Court to find infringement [as a matter of law]." Hidalgo's Objection to R&R at 12.  Specifically, Hidalgo contends that the "first sale" doctrine does not apply to the sale of custom-ordered jewelry because custom orders necessarily mean that the seller did something more than simply resell Hidalgo goods. And in doing so, argues Hidalgo, it misled consumers into thinking that it was an authorized dealer because only authorized dealers can process custom orders of goods.[2]

Hidalgo's argument is nothing more than an alternative of (or additional support for) its claim that J.Kugel confused consumers into thinking that it was an authorized dealer.  Therefore, while I agree that the "first sale" doctrine would not protect J.Kugel *if* custom orders necessarily implied that J.Kugel was an authorized dealer, this is not the case at summary judgment.  J.Kugel's sale of custom-ordered **genuine** Hidalgo rings is only a Lanham Act violation if the sale (or consumers' knowledge that J.Kugel offered the rings for sale) was likely to confuse consumers into believing that

---

[2] Significantly, Hidalgo does not (and cannot) argue that there is an issue regarding the quality of the custom-made rings.  *See, e.g., Hunting World, Inc. v. Reboans, Inc.*, 24 U.S.P.Q.2d 1844, 1849 (N.D.Ca.1992) (even though the goods at issue were produced in the same factory, there was no evidence that they were inspected and approved by the trademark owner and therefore they are not "genuine" for purposes of the Lanham Act).

J.Kugel was an authorized dealer. *See Matrix*, 988 F.2d at 590 ("Because liability under the Lanham Act is predicated on the use of a trademark in a way that is 'likely to cause confusion,' consumer confusion must be the linchpin of our analysis in this case.")(internal citations omitted). The cases cited by Hidalgo specifically stand for this very proposition. *See* Hidalgo's Objections at 11 (citing *Bandag* for the proposition that the first sale doctrine did not apply where the defendant used the plaintiff's logo in an advertisement and such use would falsely lead a consumer to conclude that defendant was one of plaintiff's authorized representatives). *See also Matrix*, 988 F.2d at 593 (applying "first sale" doctrine to resale of genuine goods since there was no evidence that reseller made any misleading representations of fact regarding its association with manufacturer, and distinguishing *Stormor* in which there was evidence that the defendant "actively misled its customers into believing that defendant was part of the plaintiff's authorized sales network").

Conduct by the reseller other than merely stocking and reselling genuine trademarked products *may* be sufficient to support a cause of action for infringement notwithstanding the first sale doctrine. *See Sebastian Intern., Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1076 (9th Cir. 1995) (citing *Bandag* and *Stormor*). Here, however, there is an issue of fact as to whether that "something more" was likely to confuse or deceive customers, in light of the banner sign which stated that J.Kugel was not an authorized dealer. Therefore, Magistrate Judge Torres correctly recommended that, as a matter of law, I cannot conclude that J.Kugel's solicitation of custom orders was likely to cause confusion.

## IV. CONCLUSION

After a de novo review of the record, Magistrate Judge Torres' report and recommendation [D.E. 191] is ratified and adopted. Accordingly, Hidalgo's motion for summary judgment is DENIED. The defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART. Hidalgo may proceed to trial on Counts 1 and 2 of its complaint as to all defendants.

DONE and ORDERED in chambers in Miami, Florida, this 30 day of January, 2007.

*Adalberto Jordan*
Adalberto Jordan
United States District Judge

Copy to:   Magistrate Judge Torres
           All counsel of record